Louis J. VIVIER, Petitioner,
Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C2-86-2054.

Court of Appeals of Minnesota.

June 2, 1987.

John A. Raetz, Anoka, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Kenneth H. Bayliss, III, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and Stone,* JJ.

## OPINION

LESLIE, Judge.

Respondent's driving privileges were revoked for failing a breath test under the implied consent law. He petitioned for judicial review, and the trial court rescinded the revocation. The Commissioner of Public Safety appeals from the trial court order. As respondent did not file a brief, this matter is considered pursuant to Minn.R. Civ.App.P. 142.03. We reverse.

## FACTS

Police Officer Richard Lafean was on routine patrol on August 28, 1986. He received information over the radio that the occupants of two parked vehicles were loud and disturbing and appeared to be drinking. Lafean arrived on the scene at 1:03 a.m. and saw two vehicles parked near the house of the citizen who had complained. He parked behind the second car, put on his spotlight, and walked toward the vehicles. He did not see anyone in the second vehicle, and he did not hear any noise or observe any drinking. As he reached the back bumper of the first car, he began smelling beer, although he did not know where the odor came from.

Lafean looked in the first vehicle, and saw three people who appeared to be "crouched down" to conceal themselves. He knocked on the window and shone his flashlight in the car, but received no response. Lafean then opened the door, because he did not know whether the occupants were sleeping, had medical problems, or were just ignoring him. After he opened the car door, the occupants began to sit up, move around, and inquire as to what was going on.

Respondent Vivier was seated behind the wheel, and produced his driver's license upon request. Lafean asked what they were doing there. They explained they were waiting for a friend who lived nearby to come home, and the friend's parents did not want them to park in front of their house. They said they had driven to the location but did not state specifically who had driven. Respondent owned the vehicle in which the individuals were found.

Lafean asked respondent to get out of the car, and took him back to his vehicle because he felt respondent might have been under the influence. Until respondent got out of his car, Lafean did not know whether the odor of beer came from

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

respondent. Lafean then noticed indicia of intoxication.

At the time Lafean approached respondent's car, it was not being operated, the lights were off, the keys were not in the ignition, and respondent's hands were not on the steering wheel. The keys were found in respondent's pocket prior to the arrest.

The officer arrested respondent for driving while under the influence, invoked the implied consent advisory, and offered respondent a breath test. Respondent agreed to take it, and the result was an alcohol concentration of .11. Respondent's driving privileges were revoked and he petitioned for judicial review. The trial court rescinded the revocation and the Commissioner of Public Safety appeals.

### ISSUES

1. Did the officer arrest respondent when he opened the car door?

2. Did the officer have specific and articulable facts to support the seizure, if any, which occurred when he opened the car door?

3. Did the officer have probable cause to believe respondent was in physical control of the motor vehicle?

### ANALYSIS

#### I.

The trial court found that when the officer opened the door of the vehicle, respondent was under arrest. Because the facts which the officer had at that time were insufficient to provide probable cause to believe respondent was driving while under the influence, the trial court rescinded the revocation. The first issue is whether the act of opening the door constituted an arrest.

■■■■ "An arrest takes place when officers restrain a suspect's liberty of movement." *State v. Lohnes*, 344 N.W.2d 605, 610 (Minn.1984). In *Lohnes*, an arrest occurred when the suspect was ordered into a squad car which he could not leave from the inside, was left there three to four hours, was handcuffed at least while he was being removed from the car to the station, was accompanied in all movement by the police, and was not free to leave. *Id.* Brief questioning of a driver, even while in a patrol car, does not convert an ordinary traffic stop into a de facto arrest so as to require a *Miranda* warning. *State v. Herem*, 384 N.W.2d 880, 883 (Minn.1986). The officer's opening of the car door did not constitute an arrest of the respondent.

#### II.

The next issue is whether the police officer's actions, while not an arrest, nonetheless constituted a seizure under the fourth amendment and, if so, whether the officer can point to specific and articulable facts which, together with rational inferences from those facts, reasonably warrant the intrusion. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *Thomeczek v. Commissioner of Public Safety*, 364 N.W.2d 471, 472 (Minn. Ct.App.1985). This case does not present the typical situation in which a moving car is stopped by the police officer. *See State v. Combs*, 398 N.W.2d 563, 564 (Minn.1987). Instead, the officer approached an already stopped car, which does not constitute a seizure. *State v. Vohnoutka*, 292 N.W.2d 756, 757 (Minn.1980). However, the officer went on to open the car door and asked respondent to get out of the vehicle. While these actions may not always constitute a seizure, 3 W. LaFave, *Search and Seizure*, § 9.2(h), at 415–16, we will assume that a seizure occurred, and address the issue of whether the intrusion was reasonable. *See Paulson v. Commissioner of Public Safety*, 384 N.W.2d 244, 246 (Minn.Ct.App.1986) (suspect was "seized" for Fourth Amendment purposes when asked to leave her car and be seated in a squad car).

■■■■ Informants who identify themselves are likely to be telling the truth. *State v. Lindquist*, 295 Minn. 398, 400, 205 N.W.2d 333, 335 (1973). The reliability of a private citizen may be presumed. *Marben v. State, Department of Public Safety*, 294 N.W.2d 697, 699 (Minn.1980). The infor-

mant, who said the car occupants, parked near a particular address, were noisy and disturbing, had objective facts upon which to base his opinion they had been drinking. *Cf. Olson v. Commissioner of Public Safety*, 371 N.W.2d 552 (Minn.1985) (anonymous tip lacked minimal indicia of reliability, where driver provided no specific and articulable facts to support bare assertion of a possibly drunk driver on the road). Finally, the officer could smell beer as he approached the vehicle, and he received no response from the occupants when he tapped on the window and shone his flashlight. These specific and articulable facts provided a sufficient basis for the seizure, if any, which occurred when the officer opened the car door and asked respondent to get out of the car.

### III.

A police officer must have probable cause to believe a driver is driving, operating, or in physical control of the motor vehicle in order to invoke the implied consent law. Minn.Stat. § 169.123, subd. 2(a) (1986). The trial court determined that the officer did not have probable cause to believe respondent was in physical control of the vehicle. In *State, Department of Public Safety v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981), the supreme court noted the legislature had in 1978 modified the previous requirement that a driver be in "actual physical control" by deleting the word "actual." The court found the legislature intended with this amendment that the statute be given the broadest possible effect. *Id.*

█ Respondent was found sitting in the driver's seat, the keys were in his pocket, and he owned the vehicle. The officer clearly had probable cause to believe respondent was in physical control of his motor vehicle. *See Sens v. Commissioner of Public Safety*, 399 N.W.2d 602 (Minn.Ct. App.1987) (officer had probable cause to believe driver was in physical control of vehicle when officer discovered driver asleep on front seat of his vehicle, even though driver had tossed ignition keys in back of vehicle). The danger that respon-

dent would "set out on an inebriated journey at any moment" was particularly clear in this case, where the vehicle occupants informed the officer that they had driven to the location and they were parked some distance away from the home of a friend for whom they were waiting. *Id.* at 605. The officer had probable cause to believe respondent was in physical control of his vehicle.

### DECISION

The trial court's order rescinding the revocation of respondent's driving privileges is reversed.

Reversed.