STATE of Minnesota, Respondent,

v.

Bryan Paul PFANNENSTEIN, Appellant.

No. C5–94–862.

Court of Appeals of Minnesota.

Dec. 27, 1994.

Review Denied March 14, 1995.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Michael C. Rajkowski, Rajkowski Hansmeier, Ltd., St. Cloud, for respondent.

Michael L. Samuelson, St. Cloud, for appellant.

Considered and decided by HUSPENI, P.J., and DAVIES and MULALLY,* JJ.

## OPINION

DAVIES, Judge.

After denial of a motion to suppress evidence, appellant was convicted of gross misdemeanor DWI and driving after cancellation, a misdemeanor. *See* Minn.Stat. §§ 169.121, subd. 1(a), (d), (e), subd. 3(c), and 171.24 (1992). This appeal is from the judgment of conviction. We affirm.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-    pointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

Officer Chris Aleshire was on patrol in Waite Park when his attention was drawn to a flickering headlight. He approached, finding a man on a motorcycle trying to start the bike. Officer Aleshire's police report, which was the substance of the facts stipulated by the parties, describes what followed:

[After turning on flashing red lights] I got out of the squad car and approached the motorcycle and driver [appellant Byran Paul Pfannenstein]. The subject on the bike then got off the bike and started making some adjustments to it. I asked the subject if he was having some problems with the motorcycle. He stated that he thought it ran out of gas. After making a few adjustments, the subject got back on the bike and tried starting it again. During this time, the subject did not make eye contact with me and appeared to be trying to hide something. The subject then got back off the bike. Upon doing so, I asked him for his driver's license. He stated to me that he did not have it with him. When he stated this to me, I smelled a strong odor of an alcoholic beverage emitting from his breath. I then requested the subject to come back to the squad car with me.

Pfannenstein failed a field sobriety test and was placed under arrest for DWI. He agreed to take a breath test, which showed an alcohol concentration of .11. A check showed his driver's license had been canceled. Pfannenstein was cited for gross misdemeanor DWI and driving after cancellation, a misdemeanor.

Pfannenstein moved to suppress the evidence obtained by Officer Aleshire after the license request. After a hearing on stipulated facts, the trial court denied the suppression motion. Pfannenstein then waived his right to a jury trial and, to expedite appellate review of the suppression issue, stipulated to the state's case under *State v. Lothenbach,* 296 N.W.2d 854, 857 (Minn. 1980).

## ISSUE

Was the officer's request to produce identification a Fourth Amendment seizure?

## ANALYSIS

■ On stipulated facts this court determines as a matter of law whether the officer's actions amounted to a seizure and if there was an adequate basis for the seizure. *State v. Storvick,* 428 N.W.2d 55, 58 n. 1 (Minn.1988); *State v. Day,* 461 N.W.2d 404, 406 (Minn.App.1990), *pet. for rev. denied* (Minn. Dec. 20, 1990).

The Supreme Court defined a Fourth Amendment seizure of the person in *United States v. Mendenhall,* 446 U.S. 544, 554–55, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980):

We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

■ Pfannenstein asks us to draw a bright line making any request for identification a seizure. The *Mendenhall* "totality of the circumstances" test is, however, not conducive to such line-drawing. Not every request for identification rises to the level of intrusiveness that *Mendenhall* requires.

This court faced a request-for-identification issue in a case involving an already-stopped vehicle—as does this case—in *State v. Day,* 461 N.W.2d at 406. This court held:

We conclude the summoning by the police officer, who was in uniform and armed, requiring appellant to approach the officer's squad car to provide identification and to respond to questioning, constitutes a restraint and seizure under the fourth amendment.

*Id.* at 407. But the officer in *Day* had "summon[ed]" the defendant to approach the squad car not only "to provide identification" but also "to respond to questioning." *Id.* This action was more intrusive than Officer Aleshire's request for identification, for Officer Aleshire did not summon Pfannenstein to his squad car and the request for identification apparently did not entail further questioning.

This court has held that police need "a particularized and objective basis for the minimal intrusion occasioned by asking the driver to identify himself." *Cobb v. Commissioner of Pub. Safety,* 410 N.W.2d 902, 903 (Minn.App.1987). But the cases *Cobb* cites involve automobile stops that, although made for purposes of driver's license identification or other routine questioning, were a significantly greater intrusion than simply asking for a driver's license. *See United States v. Cortez,* 449 U.S. 411, 415–17, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981) (border patrol stop of vehicle on suspicion of alleged illegal immigration); *Delaware v. Prouse,* 440 U.S. 648, 650–52, 99 S.Ct. 1391, 1394–95, 59 L.Ed.2d 660 (1979) (random stop of vehicle to check driver's license *and* vehicle registration); *Vivier v. Commissioner of Pub. Safety,* 406 N.W.2d 587, 588 (Minn.App.1987) (officer opened door of already-stopped car and "asked respondent to get out of the car"). Moreover, this court has not read *Cobb* as holding that every request for identification is a seizure. *See LaBeau v. Commissioner of Pub. Safety,* 412 N.W.2d 777, 779 (Minn. App.1987) (under *Cobb,* seizure occurs only if police request identification *and* ask driver to leave vehicle).

■ We conclude that, under the "totality of the circumstances" test, the more intrusive a request for identification is the more likely that it will be considered an investigative stop and, thus, a seizure. But all the circumstances of the encounter must be considered.

■ The "totality of the circumstances" here do not indicate that Pfannenstein was subjected to a seizure. Pfannenstein told Officer Aleshire he was having problems with his motorcycle. The officer's approach could reasonably have been perceived as an offer of assistance. Officer Aleshire did not prevent Pfannenstein from leaving. When Aleshire finally asked for Pfannenstein's license, it was a single request. *Cf. State v. Dezso,* 512 N.W.2d 877, 880 (Minn.1994) (driver's surrendering of wallet to officer after repeated and persistent requests was merely submission to a show of authority and not a voluntary consent). In contrast to the "summoning" in *Day,* here there was no "show of authority" or other intimidating conduct that would indicate to a reasonable person that he or she was not free to decline the request for identification. *See generally In re Welfare of E.D.J.,* 502 N.W.2d 779, 782 (Minn.1993) (moral pressure to cooperate with police officer does not make police request "seizure").

### DECISION

The officer's request for appellant's identification was not a seizure.

**Affirmed.**