*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0691**

State of Minnesota,
Appellant,

vs.

Zachary Michael Staples,
Respondent.

**Filed September 8, 2014
Reversed and remanded
Rodenberg, Judge**

Cass County District Court
File No. 11-CR-14-370

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Christopher J. Strandlie, Cass County Attorney, Benjamin T. Lindstrom, Assistant County Attorney, Walker, Minnesota (for appellant)

Mark D. Nyvold, Fridley, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Cleary, Chief Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant State of Minnesota challenges the district court's pretrial ruling suppressing evidence of respondent Zachary Michael Staples's intoxication and

subsequent test refusal, and its derivative dismissal of the complaint for want of probable cause. We reverse and remand.

## FACTS

On March 3, 2014 at approximately 12:45 a.m. (early Monday morning), Deputy Mark Diaz of the Cass County Sheriff's Office was patrolling in Cass Lake. He saw a car travel southbound past his location. The car pulled over on the street in front of the Big Tap Bar. Deputy Diaz testified: "I thought it was kind of strange, because to my knowledge they're not open on Sunday nights late because they serve alcohol. I don't know that they can be open." Deputy Diaz then "looped around the block just to see if the car would leave or if it was going to stay there or what the deal was."

The driver, later identified as respondent, got out of the car and then re-entered it. Deputy Diaz testified that he then pulled his squad car behind respondent's car, "just to see what was going on, because I thought it was kind of strange that the vehicle was there."[1] He did not activate the squad car's emergency lights or siren.

Respondent got out of his car "and walked out almost kind of away from the car towards the middle of the street." Deputy Diaz asked respondent for identification, which respondent provided. When asked why he was in the area, respondent stated "that he was there to pick up his cousin, who was supposed to be at the bar." Deputy Diaz testified that, while they were conversing, he "observed the odor of alcohol coming from [respondent's] person, and [he] asked [respondent] when he had had his last drink, and

---

[1] The record does not disclose if the area where appellant had parked was one with parallel parking spaces, diagonal parking, or some other configuration.

[respondent] stated approximately eight months ago." Deputy Diaz asked respondent how much alcohol he had consumed that night, and respondent answered, "[N]ot much." Deputy Diaz administered field sobriety tests and a preliminary breath test, from which he concluded that respondent was under the influence of alcohol. Respondent was arrested and transported to jail. He was read the implied consent advisory, refused to take a urine or blood test, and was charged with (1) second-degree driving while impaired-test refusal in violation of Minn. Stat. § 169A.20, subd. 2, .25 (2012); (2) third-degree driving while impaired in violation of Minn. Stat. § 169.20, subd. 1(1), .26 (2012); and (3) driving after revocation in violation of Minn. Stat. § 171.24, subd. 2 (2012). Respondent moved to suppress the evidence resulting from his encounter with Deputy Diaz.

At the omnibus hearing, Deputy Diaz testified to the above facts. Respondent testified that he went to the Big Tap Bar to pick up his cousin, and that he initially left his car to see whether the bar was open. He got out of his car, approached the bar, and discovered that the bar was closed. When he turned around and went back to his vehicle, he watched Deputy Diaz U-turn his squad car and pull in behind his car. Respondent testified:

> So I exited my vehicle and I asked him, "Hey, what seems to be the problem," you know. He's all "What are you doing here?" I'm like, "Well, I'm here to pick up my cousin and my little brother's birthday. You know, buy a 12-pack or 18-pack if they got it."

3

Respondent testified that Deputy Diaz then told him that bars are closed on Sundays in Minnesota, but respondent disputed this and stated that only liquor stores are closed on Sundays.[2]

The district court granted respondent's motion to suppress evidence of his intoxication and test refusal, reasoning:

> Here, [respondent's] vehicle was parked on a downtown public street. There was no indication of car trouble or driver distress. The Big Tap Bar is open on Sundays, although the Big Tap Bar was not open at that time. Except for the presence of [respondent] near the bar, there was no other indication that a burglary might be in progress. Because the intrusion of approaching [respondent] was not supported by a constitutionally sufficient reason, the evidence obtained as a result of the encounter shall be suppressed. Because the charges would then not be supported by probable cause, the charges shall be dismissed for lack of probable cause.

The state appeals.

## DECISION

The state may appeal "pretrial orders with critical impact on the case." *State v. Williams*, 842 N.W.2d 308, 311-12 n.2 (Minn. 2014) (citing Minn. R. Crim. P. 28.04, subd. 1(1)). To satisfy the critical-impact test, the state must show "clearly and unequivocally (1) that the district court's ruling was erroneous and (2) that the ruling will have a critical impact on the [s]tate's ability to prosecute the case." *State v. Zais*, 805 N.W.2d 32, 36 (Minn. 2011) (quotation omitted). The parties agree that the order appealed from has a critical impact on the state's ability to prosecute this case, as the

---

[2] Minn. Stat. § 340A.504 (2012) provides that, with certain enumerated exceptions, sale of intoxicating liquors is generally prohibited on Sundays.

4

district court's order suppressed all of the state's evidence and dismissed the case. We therefore consider whether the district court clearly and unequivocally erred.

"When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted). Both the United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. The legality of a limited investigatory detention turns on whether the police officer's act constitutes a seizure and, if so, whether the state demonstrates a reasonable, articulable suspicion for the seizure. *State v. Harris*, 590 N.W.2d 90, 98-99 (Minn. 1999). The district court concluded: "Because the intrusion of approaching [respondent] was not supported by a constitutionally sufficient reason, the evidence obtained as a result of the encounter shall be suppressed." It therefore erred by not analyzing whether there was a seizure, and if so, when the seizure occurred and whether it was supported by a reasonable, articulable suspicion of criminal activity. *See id.* at 98.

A seizure has occurred "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *In re Welfare of E.D.J.*, 502 N.W.2d 779, 781 (Minn. 1993) (quotation omitted). To determine if there has been a seizure, we examine whether, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). "The reasonable person standard is an objective standard which

5

ensures that the scope of [the constitutional] protection does not vary with a particular person's subjective state of mind." *Id.*

Generally, a seizure does not occur when an officer approaches and talks to a person in a parked vehicle. *State v. Vohnoutka*, 292 N.W.2d 756, 757 (Minn. 1980); *see also Norman v. Comm'r of Pub. Safety*, 409 N.W.2d 544, 545 (Minn. App. 1987) (noting that the officer did not seize the appellant by walking up to him while he was standing outside his vehicle). Various acts indicating a seizure may include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the . . . citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *State v. Pfannenstein*, 525 N.W.2d 587, 588 (Minn. App. 1994) (quotation omitted), *review denied* (Minn. Mar. 14, 1995). Other such acts include "boxing the car in, [and] approaching it on all sides by many officers or use of flashing lights." *State v. Sanger*, 420 N.W.2d 241, 243 (Minn. App. 1988) (quotation omitted). The *Sanger* court determined that

> interrogating in a conversational manner or physical contact that is a normal means of attracting attention may be an acceptable interaction if it is not overbearing or harassing in nature. . . . [S]uch interactions can change in character and become seizures if the officer engages in conduct which a reasonable man would view as threatening or offensive even if performed by another private citizen.

*Id.* (quotations omitted).

The state argues that Deputy Diaz did not seize respondent at any point before he observed indicia of intoxication. It compares this case to *Pfannenstein*, where a motorist was approached by police when he was trying to start his motorcycle. 525 N.W.2d at

6

588. The motorist in that case was asked if he was having trouble with his motorcycle and was also asked for his driver's license. *Id.* We determined that the officer did not prevent the motorist from leaving, that the motorist was not "summoned" by law enforcement, and that there was no "intimidating conduct that would indicate to a reasonable person that he or she was not free to decline the request for identification." *Id.* at 589. Respondent argues that he was seized by Deputy Diaz and that the U-turn driving maneuver and subsequent request for identification "conveyed to a reasonable person that he or she was not free to leave."

The district court's reasoning that Deputy Diaz "approaching" respondent amounted to an "intrusion" requiring constitutional justification is unsupported by the applicable caselaw. It is undisputed that respondent initially stopped his car without any signal to do so from Deputy Diaz, who pulled in behind him after he stopped. Deputy Diaz did not use his overhead lights or siren. Respondent got out of his car a second time of his own volition and initiated the conversation with Deputy Diaz by asking, "Hey, what seems to be the problem?" Although Deputy Diaz asked respondent for identification, he made no show of force. The record does not indicate that respondent was compelled to produce his identification. *See id.* at 588 (holding that an officer's request for identification does not necessarily constitute a seizure). Deputy Diaz was not limited by the United States or Minnesota Constitutions in talking to a citizen who approached him. Once the two were engaged in conversation, Deputy Diaz noticed the odor of alcohol on respondent. This observation, coupled with his observation of respondent's recent driving, entitled Deputy Diaz to administer field sobriety tests and a

7

preliminary breath test.  *See O'Neill v. Comm'r of Pub. Safety*, 361 N.W.2d 471, 473 (Minn. App. 1985) ("[An] officer must observe one or more indicia of intoxication to form probable cause sufficient to arrest a person for driving while under the influence of alcohol.").  In fact, given respondent's recent driving and his proximity to an operational motor vehicle, Deputy Diaz would have been remiss not to have investigated further.

The district court clearly and unequivocally erred by suppressing the evidence of respondent's intoxication and test refusal after respondent approached Deputy Diaz of his own volition and evidenced signs of alcohol consumption.  Respondent was not seized until his arrest for driving while impaired.  Therefore, we reverse the dismissal and remand for further proceedings.

**Reversed and remanded.**