STATE of Minnesota, Respondent,

v.

Verdel Lance HOUSTON, Appellant.

No. CX–02–371.

Court of Appeals of Minnesota.

Jan. 7, 2003.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, Minnesota Public Defender, Sara L. Martin, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by SHUMAKER, Presiding Judge, MINGE, Judge, and HUSPENI, Judge.*

## OPINION

MINGE, Judge

Appellant seeks review of his felony conviction, arguing, inter alia, that the police officers did not have a reasonable, articulable suspicion to stop appellant and seize evidence and that the jury should have been given a specific instruction that "fleeting" control of a firearm does not constitute possession. We affirm.

## FACTS

At 2:00 a.m. on April 19, 2001, Minneapolis police officers Brian Thureson and Stephen McBride heard what they thought was a single gunshot or a car backfiring in a high-crime area of Minneapolis. The officers stopped a person on the street and asked if he heard the possible gunshot. He pointed south. As the officers continued in that direction, they spotted three men emerging from an alley. When the officers pulled alongside the men, two of the men stopped. Appellant Verdel Houston, the third man, continued walking.

Both of the officers testified that as they approached the three, appellant appeared nervous, that as he walked away he looked over his shoulder, and that he grabbed the waistband of his pants in a gesture that was described as either preventing an object from falling out of his pants or preventing his pants from falling down. According to the officers, it was possible that appellant had any kind of object in his pants, including a cell phone, knife, bottle, hairbrush, narcotics, or some other contraband or weapon.

After walking a short distance, appellant started running. At that point, Officer McBride got out of the patrol car and started chasing appellant on foot. While McBride was running, he used his radio to tell Officer Thureson what was happening. Officer McBride communicated that he saw appellant toss what appeared to be a gun over a fence and into the yard of a house. Officer Thureson turned on the emergency lights on the patrol vehicle and followed appellant, cutting him off at the corner. While Officer Thureson apprehended appellant, Officer McBride retrieved the gun. Officers McBride and Thureson advised appellant of his rights, questioned him, and arrested him for unlawful possession of a firearm.

As a result of this incident, appellant was charged with felony possession of a firearm. The complaint alleged violations of Minn.Stat. §§ 624.713, subd. 1(b), 609.11 (2000) (stating in Minn.Stat. § 624.713, subd. 1(b) that a person convicted as a juvenile for a violent crime is ineligible to possess certain weapons). Appellant had a prior criminal record including second-degree murder and illegal possession of a firearm.

Appellant claimed at trial that the police did not have a reasonable, articulable suspicion to detain him and that the resulting chase and recovery of the gun should be excluded from the evidence presented to the jury. The trial court ruled against appellant.

At trial, appellant took the stand in his own defense. He contended that the gun was originally in the possession of his companions. Appellant testified that those men had shown him the gun earlier in the evening. He stated that when he and his

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

companions were exiting the alley where the police first saw them, the gun was still in the possession of one of the other men. Appellant claimed that his companion placed the gun in appellant's jacket pocket as the officers were approaching. Appellant stated that he ran because he thought he would be "taken down" if the police saw that he had a gun or if he tried to surrender with a gun. Appellant further stated that he did not give the police officers this explanation the night of the arrest because he was afraid they would not believe him. When the prosecutor pressed him on cross-examination about why he did not explain this to the police when he was first detained, appellant objected to the line of questioning as violating his constitutional right to remain silent.

Appellant claimed at trial that because his possession of the gun was fleeting possession, he was entitled to a special jury instruction that he did not violate the law if he handled the gun for the sole purpose of disposal. The court agreed that the appellant could not be convicted if the gun was planted on him. The court did not give a special instruction on fleeting control but instead gave a general instruction on possession.

The jury found appellant guilty of felony possession of a firearm. The trial court sentenced appellant to 60 months in prison. This appeal followed.

## ISSUES

1. Did the district court err by determining that the police officers had a reasonable, articulable suspicion to stop appellant and to subsequently seize the gun?

2. Was it reversible error for the district court to refuse to instruct the jury on fleeting possession of a firearm?

3. Did the questioning of appellant at trial by the prosecutor regarding appellant's failure to provide the police or prosecutor with the fleeting-possession-of-the-gun explanation violate appellant's Fifth Amendment right to remain silent?

## ANALYSIS

### I.

Appellant claims that the police did not have a reasonable, articulable suspicion to stop him and question him or to seize him before he ran. Appellant further claims that because the police did not have an adequate basis to seize him, the evidence of his possession of a gun was not properly obtained and should have been excluded at trial. Appellant moved to suppress evidence of the gun; it appears from the record that the motion was denied.

■■■ This court may review pretrial motions to suppress evidence and independently determine, as a matter of law, whether the district court erred in its decision to suppress or not suppress the evidence. *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999) (citing *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992)). In this case, the facts are generally not in dispute. This court must determine whether the police officer's actions constitute a seizure or confinement of appellant and if the officer articulated an adequate basis for the seizure. *Harris*, 590 N.W.2d at 98 (citing *State v. Storvick*, 428 N.W.2d 55, 58 n. 1 (Minn.1988)).

■■■ The mere fact that there is an encounter between the police and a citizen does not mean there has been a seizure of the person. *In re E.D.J.*, 502 N.W.2d 779, 781 (Minn.1993). A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *E.D.J.*, 502 N.W.2d at 781 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968)). In other

words, no seizure occurs unless the law enforcement officers "convey a message that compliance with their request is required." *Harris*, 590 N.W.2d at 98 (quoting *Florida v. Bostick*, 501 U.S. 429, 435, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991)).

■■■ Under the Minnesota Constitution

a person has been seized if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter.

*Id.* (quoting *State v. Cripps*, 533 N.W.2d 388, 391 (Minn.1995)) (citing *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). To judge the totality of the circumstances our supreme court has adopted the *Mendenhall–Royer* standard. *Harris*, 590 N.W.2d at 98. Under this standard, the following are examples of when a seizure may have taken place:

" 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' "

*Id.* (quoting *E.D.J.*, 502 N.W.2d at 781 (quoting *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877)). Seizure has not taken place just because a police officer approaches a citizen in a public place and begins to ask him questions. *Id.* (citing *E.D.J.*, 502 N.W.2d at 782).

In this case, the police officers approached appellant and the two other men to ask a single question, "Have you heard a gunshot?" The officers had already asked another person if that person had heard a gunshot, and the officers were continuing in the direction where they suspected the sound originated and where the unidentified person had indicated. The officers did not have the lights or siren of their squad car on. They did not have their guns drawn. They did not physically touch appellant or the other two men. There is no evidence that they were threatening appellant or his companions, either by their tone of voice or by their words. The officers only wanted to ask the question, "Have you heard a gunshot?"

■■ Appellant's own actions gave the officers a reasonable basis to stop appellant. The officers were in a high-crime area, investigating a possible gunshot. When appellant was approached by the police officers, he reacted by reaching for the waistband of his pants and running while looking over his shoulder. One of the officers testified that when appellant reached for his waistband, the officer believed that appellant had a bulky or heavy item like a gun. Looking at the totality of the circumstances, we conclude appellant provided the officers with a reasonable basis to chase and stop him.

The state argues that a recent United States Supreme Court decision addressing the issue of fleeing from the police is persuasive in this case. In *Illinois v. Wardlow*, the Court reversed an Illinois Supreme Court decision. *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (holding sudden flight in a high-crime area creates a reasonable, articulable suspicion of criminal conduct). While noting *presence* in a high-crime area alone is not enough to support a suspicion that a person is committing a crime, the court held that unprovoked flight upon noticing the police *would* arouse an officer's suspicion. *Wardlow*, 528 U.S. at 124, 120 S.Ct. at 676. In

addition, the Court stated that it recognizes "that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Id.* (citations omitted).

Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.

*Id.* The Court also recognized the right of an individual to go about his business when approached by the police. *Id.* at 125, 120 S.Ct. at 676. The Court stated that a person even has a right to ignore the police. *Id.*

But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite.

*Id.*

The majority in *Wardlow* acknowledged that there may be "innocent reasons for flight" and that "flight is not necessarily indicative of ongoing criminal activity." 528 U.S. at 125, 120 S.Ct. at 677. The Court noted that when a person's behavior is ambiguous, that ambiguity is itself a reason to detain the individual. *Id.* By stopping the individual, the ambiguity can be resolved. *Id.* Though such stops may lead to detention of innocent people, the Court recognized that the possibility of stopping innocent people does not preclude an officer in a high-crime area from stopping or pursuing an individual for questioning when that individual acts suspiciously and flees. *Id.* at 126, 120 S.Ct. at 677. If the "officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way." *Id.*

While Minnesota state courts have not discussed *Wardlow* in a published opinion, an 8th circuit court noted *Wardlow* when determining that the police had a reasonable suspicion of criminal activity. *U.S. v. Dupree*, 202 F.3d 1046 (8th Cir.2000). In

that case, the police received an anonymous tip concerning drug sales in a particular area. *Id.* at 1047. The tip included a description of a man who was said to possibly be the "main man." *Id.* at 1048. When the officers went to question a group of men, including one fitting the description given in the tip, the men started walking away. *Id.* The officers followed and asked if they could talk to the men. *Id.* Dupree walked over to the side of a bridge and dropped a small object over the railing. *Id.* At that point, the officers seized the defendant. *Id.* The court in *Dupree* stated that it was reasonable for the officer to suspect that the defendant was attempting to destroy evidence. *Id.* at 1049. The court held this was more than a "headlong flight" as discussed in *Wardlow.* *Id.* The court found that the officer formed a reasonable, articulable suspicion based on the information supplied in the tip, the high incidence of drug trafficking in the area, and the defendant's "evasive action in dropping a small object off the bridge before talking to the police." *Id.*

The state argues that based on *Wardlow,* appellant's flight from police while in a high-crime area is itself enough to justify stopping appellant. Here, we have more. The facts of this case include the sound of a possible gunshot and a defendant who aroused suspicion by nervously hitching up his pants, looking over his shoulder, and evading the police by running away. The police had a basis for asking appellant to pause to answer questions at the outset of the encounter. The appellant's actions after the police spotted him support the police officers' actions in detaining appellant. When the appellant fled and tossed the gun, the basis for his seizure grew stronger. We hold under the totality of the circumstances that the officer had a

reasonable, articulable suspicion to stop appellant and retrieve the gun as evidence.

## II.

 Appellant argues that the district court abused its discretion when it denied his request for a jury instruction differentiating between possession and fleeting control. District courts "are allowed considerable latitude in selection of language" used in jury instructions. *State v. Gray*, 456 N.W.2d 251, 258 (Minn.1990) (quoting *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986)). Refusing to give a requested jury instruction lies within the discretion of the district court and will not be reversed absent an abuse of discretion. *State v. Cole*, 542 N.W.2d 43, 50 (Minn. 1996). The focus of the analysis is on whether the refusal resulted in error. *State v. Kuhnau*, 622 N.W.2d 552, 555 (Minn.2001). When faced with an erroneous refusal to give a jury instruction, the reviewing court must "examine all relevant factors to determine whether, beyond a reasonable doubt, the error did not have a significant impact on the verdict." *State v. Shoop*, 441 N.W.2d 475, 481 (Minn.1989) (citation omitted). If the error might have prompted the jury to reach a harsher verdict than it might otherwise have reached, the defendant is entitled to a new trial. *Id.*

Here appellant contends that his possession of the gun was temporary, not within his control, and for the sole purpose of disposing of the weapon. Although a "fleeting control" exception has not been recognized in Minnesota, appellant argues that his case offers the appropriate opportunity for Minnesota to adopt the "fleeting control" distinction. The concept of fleeting control has been adopted in several other states. *United States v. Landry*, 257 F.2d 425, 431 (7th Cir.1958) (stating that possession is "actual control, care and

management of, and not a passing control, fleeting and shadowy in its nature" (citation omitted)); *Jordan v. State*, 819 P.2d 39, 43 (Alaska Ct.App.1991) (holding that a jury instruction including "passing control" was necessary under the circumstances); *People v. Martin*, 25 Cal.4th 1180, 108 Cal.Rptr.2d 599, 25 P.3d 1081, 1084 (2001) (holding transitory possession applied only to momentary or transitory possession of contraband for the purpose of disposal); *see also* Model Penal Code § 5.07 (1985) (stating "[i]t is a defense under this Section for the defendant to prove by a preponderance of evidence * * * that he possessed it briefly in consequence of having found it or taken it from an aggressor, or under circumstances similarly negativing any purpose or likelihood that the weapon would be used unlawfully").

Appellant asserts that the district court apparently agreed with the premise of "fleeting control," because the judge in this case stated:

> [Y]our client cannot be found guilty when the—if the weapon was planted on him. He cannot be found guilty of consciously exercising dominion and control over it if he didn't want the weapon planted on him and he didn't control it.

But, appellant's request for a "fleeting control" jury instruction was denied. The judge noted that appellant's cases supporting fleeting possession were all regarding possession of *narcotics* rather than *firearms*, and the judge explained:

> The reason that the instruction is not being given is that you have an ample opportunity under the instructions as given through the criminal JIG to argue that your client did not knowingly possess a firearm; that it was planted on him, and that he disposed of it; that he did not intend to possess it; that he did not consciously exercise dominion and

control over it, nor could he because it was not his to control.

Those arguments are absolutely and unequivocally fair game without any doubt because you have a record from which to argue it. You are not being prevented from doing so. * * * But the cases that have been cited are factually distinct, legally distinct, and inapplicable.

▌ While we agree that an instruction on "fleeting control" may have been appropriate, we do not find the district court's failure to give a specific "fleeting control" instruction to be an abuse of discretion. Appellant had ample opportunity to argue to the jury that he did not knowingly possess the firearm. The jury was instructed that the prosecution had to show that appellant knowingly possessed the gun. This allowed the jury to consider whether appellant had the required possession. The lack of a specific instruction regarding "fleeting control" did not preclude appellant from arguing this to the jury, nor did it preclude the jury from considering the matter. It was not an abuse of discretion for the district court to exclude specific language regarding "fleeting control" from the jury instruction.

## III.

### Right to remain silent

Appellant challenges several other actions of the district court, claiming errors supporting reversal of his conviction. We first address appellant's contention that the prosecutor's cross-examination eroded appellant's right to remain silent at the time he was first questioned and detained. Appellant emphasizes that his right to remain silent meant he had no responsibility to give his fleeting possession explanation when he was first questioned.

▌ Appellant contends there are three separate time frames to consider with respect to his right to remain silent: pre-arrest, post-arrest/pre-Miranda, and post-Miranda. Clearly, appellant is entitled to a Miranda warning at the time of arrest and therefore has the right to remain silent at that time. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant notes that the federal courts have determined that pre-arrest silence is impeachable when a defendant's direct testimony raises the issue of his silence on the night of his arrest. *Jenkins v. Anderson*, 447 U.S. 231, 240, 100 S.Ct. 2124, 2130 (1980) (holding that impeachment by use of pre-arrest silence does not violate the 14th Amendment). Here, appellant argues that any questioning about his pretrial silence from the start of the chase is a violation of his Fifth Amendment right to remain silent.

▌ Appellant contends that the prosecution goaded him into explaining that he invoked his Fifth Amendment right to account for his lack of explanation about why he ran or why he did not tell the officer the reason for the presence of the gun on his person. Generally, the prosecution cannot at trial use the fact that the defendant "stood mute or claimed his privilege [to remain silent] in the face of accusation." *State v. Roberts*, 296 Minn. 347, 352, 208 N.W.2d 744, 747 (1973). At the same time, "[c]ommon law traditionally has allowed witnesses to be impeached by their previous failure to state a fact" when that fact would commonly have been asserted. *Jenkins*, 447 U.S. at 239, 100 S.Ct. at 2129.

▌ Here the prosecutor's questioning was an effort to impeach appellant's account of the incident by indicating appellant's reasons for having the gun were only advanced later in the development of the case. Thus, it was not an attack on his right to remain silent, but rather a chal-

lenge to the credibility of his story. The prosecutor was asking, if appellant's story was true, why not offer it immediately when his companions could corroborate the claims? This was not an effort to compromise appellant's right to remain silent.

Even if it were error for the prosecutor to question appellant's silence, a new trial is not automatic. A new trial is not required if "the state can show beyond a reasonable doubt that the error was harmless." *State v. Jones,* 556 N.W.2d 903, 910 (Minn.1996) (citation omitted). "[A]ppellate courts must look to the basis on which the jury rested its verdict and determine what effect the error had on the actual verdict." *Id.* (citation omitted). "If the verdict actually rendered was surely unattributable to the error, the error is harmless beyond a reasonable doubt." *Id.* (citation omitted).

Here, appellant had the opportunity to persuade the jury that the gun was planted on his person and that he did not intend to possess it. There was ample evidence to support the verdict without the negative implication of his silence. We decline to reverse appellant's conviction based on the district court's decision to allow the questioning. We do not reach the constitutional issue of whether there is a pre-arrest right to remain silent.

### Questioning regarding police lies

Appellant contends he was denied his constitutional right to a fair trial because of prosecutorial misconduct. Appellant argues it was misconduct for the prosecutor to repeatedly ask appellant if the police were lying. It is within the district court's discretion to determine whether prosecutorial misconduct warrants a new trial. *State v. Ashby,* 567 N.W.2d 21, 27 (Minn.1997). This court will reverse a conviction on the ground of prosecutorial misconduct only if the misconduct

was "inexcusable and so serious and prejudicial that a defendant's right to a fair trial is denied." *State v. Smith,* 541 N.W.2d 584, 588 (Minn.1996) (citation omitted). In cases involving less serious prosecutorial misconduct, an appellate court will reverse only if the misconduct substantially influenced the jury. *State v. Caron,* 300 Minn. 123, 128, 218 N.W.2d 197, 200 (1974). In *State v. Pilot,* the court set forth the following rule about the prosecutor's use of "were they lying" questions:

> As a general rule, "were they lying" questions have no probative value and are improper and argumentative because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence. We emphasize, however, that we have not adopted a blanket rule of law that under no circumstances is a "were they lying" question to a witness on cross-examination proper and we do not believe an inflexible rule prohibiting such questions is necessary or desirable. Situations may arise where "were they lying" questions may have probative value in clarifying a particular line of testimony, in evaluating the credibility of a witness claiming that everyone but the witness lied or, as in *Overlee,* the witness "flatly denies the occurrence of events."

*State v. Pilot,* 595 N.W.2d 511, 518 (Minn. 1999) (citation omitted).

The questions that appellant objected to here included questions about whether the police asked appellant about his background, about whether he had ever been in jail or detained as a juvenile, and about whether the police officers had their lights on or performed a u-turn. These questions highlighted for the jury the credibility of appellant. *State v. Bliss,*

457 N.W.2d 385, 390 (Minn.1990) (stating it is the duty of the jury to determine witness credibility and the weight to be given each witness's testimony). The prosecutor's questions were merely designed to highlight the probative value of appellant's testimony so that the jury could determine whether to believe appellant. We note that even if the questions constituted prosecutorial misconduct, they were harmless.

*Appellant's testimony regarding control of the gun*

 Appellant claims the prosecutor required him, as a lay witness, to give legal conclusions regarding his possession of the gun by asking, "You exercised control over the gun when you took it?" A lay witness can give an opinion if it is based on the perception of that witness. *State v. Larson,* 389 N.W.2d 872, 876 (Minn.1986). The initial question regarding "control over the gun" was reworded, and the reworded question focused on how appellant disposed of the gun. Even if the original question required appellant to state a legal conclusion, that question was withdrawn. Because the question was reworded, we find any potential error by the prosecutor in the wording of the original question to be harmless.

*Cumulative effect of errors*

 Even if an error at trial, standing alone, would not be sufficient to require reversal, the cumulative effect of the errors may compel reversal. *State v. Underwood,* 281 N.W.2d 337, 344 (Minn.1979). In this case, any errors committed were harmless, and their cumulative effect did not deprive appellant of his right to a fair trial. *State v. Keeton,* 589 N.W.2d 85, 91 (Minn.1998) (holding that an appellant can be entitled to a new trial if the cumulative effect of errors would have deprived him of his right to a fair trial).

## DECISION

The district court properly allowed into evidence the weapon tossed by a nervous-appearing appellant during flight from the police, who were investigating a gunshot in a high-crime neighborhood. It was not an abuse of discretion for the district court to refuse to give the fleeting possession jury instruction. The prosecutor's questioning of appellant about his failure to earlier give the fleeting control explanation did not violate appellant's right to remain silent. Even if the prosecutor's "were they lying" questions constituted misconduct, the questions did not affect appellant's right to a fair trial.

**Affirmed.**