STATE of Minnesota, Respondent,

v.

Saye Lawrence WHITTLE, Appellant.

No. A03–1111.

Court of Appeals of Minnesota.

Aug. 17, 2004.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, David C. Brown, Assistant County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Marie L. Wolf, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by SCHUMACHER, Presiding Judge; SHUMAKER, Judge; and PARKER, Judge.*

## OPINION

ROBERT H. SCHUMACHER, Judge.

This appeal is from a conviction of one count of third-degree criminal sexual conduct, Minn.Stat. § 609.344, subd. 1(d) (2002) (prohibiting sexual intercourse when complainant physically helpless). Appellant Saye Lawrence Whittle argues that the trial court abused its discretion in limiting his cross-examination of the victim and in allowing the state to impeach him with a prior statement that was not truly inconsistent with his trial testimony. We affirm.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## FACTS

Whittle was charged with third- and fourth-degree criminal sexual conduct for allegedly having sexual penetration and sexual contact with two women, K.K. and N.M., while the women were asleep following a party at their house. Whittle, who was a guest at the party, claimed the women were not asleep and that the sexual conduct, in each case, was consensual.

Before trial, the state brought a motion to exclude any reference to K.K.'s belief that she was on probation at the time of the party. The defense sought to cross-examine K.K. on the subject to support a theory that K.K. was motivated to claim the sexual conduct was criminal in order to shift the focus from her own use of cocaine, which she could have believed was a violation of her probation. As an offer of proof, the defense presented a computer printout showing that K.K. had been arrested on November 23, 2001, in North Dakota, charged with "hindering law enforcement," a Class A misdemeanor, and may have been placed on unsupervised probation, and that she would not have been discharged from probation until after the charged offense occurred.

The trial court ruled that the defense could not impeach K.K. with her North Dakota probationary status because the evidence was "too remote," and the potential prejudice to the state's case outweighed its probative value.

K.K. testified that she was living in a south Minneapolis house with four other women in March 2002. One Friday night, after working all day as a waitress, she got a call from Don Coquillette, a friend of the women at the residence, and agreed to meet him at a Minneapolis bar. One of

Minn. Const. art. VI, § 10.

K.K.'s roommates accompanied her. At the bar, they met Coquillette and Whittle, whom they had never met before.

At some point it was agreed that they would try to buy some cocaine that night. After Coquillette could not locate any cocaine, the four of them drove to the women's home to make more calls. They eventually located N.M., another roommate, at a party where, she told them, she had obtained cocaine. After driving to the party and picking up N.M., they returned to the women's home, intending to use the cocaine. K.K. testified that all five of them used the cocaine, while partying mostly in N.M.'s large master bedroom.

K.K. testified that at about 5:00 a.m. she closed the door to her bedroom, which was next to N.M.'s, changed into her pajamas, and went to sleep. She testified that she woke later to find Whittle on top of her, having vaginal intercourse with her. She tried to push him off of her, eventually succeeding, got dressed and left for work. But after realizing she was too upset to work, she drove to her family's home in North Dakota, where after taking a nap she described the sexual assault to her older sister. She did not, however, tell her sister that she had used cocaine during the party. K.K. also failed to tell police about the cocaine use until after Minneapolis police learned this from others present and asked her about it.

N.M. testified that she had gone to a party on March 29, 2002, at a friend's house and reported to K.K. and the others over the telephone that she had access to some cocaine. When the other four drove her back to the women's home, they drank beer and "hung out" in N.M.'s bedroom listening to music.

N.M. testified that after K.K. went to her own bedroom, Coquillette went into the living room, and she went to the kitchen to finish her beer, with Whittle accom-panying her. She returned to her bedroom alone and lay on her bed in her clothes and fell asleep. N.M. testified that she awoke to find her pants unzipped, her panties rolled down, and Whittle performing oral sex on her. Whittle was performing oral sex on her. She told him to get off, which he eventually did. N.M. testified that she was "shocked" and denied that she had been flirting with Whittle that evening.

Coquillette testified for the state, indicating, contrary to Whittle's later testimony, that the four of them drove from the bar to Coquillette's house. Coquillette testified that there was no flirting between Whittle and either K.K. or N.M.

After the state completed its case-in-chief, the prosecutor gave notice that, if Whittle chose to testify, he intended to impeach him with his statement to police. Defense counsel argued that police had misstated the *Miranda* warning before obtaining the statement and that one officer had pressured Whittle into talking while driving him to jail following his arrest.

After viewing the videotape of Whittle's statement, the court ruled that the state could use it to impeach him. The court noted that the statement was given voluntarily and was exculpatory.

Whittle testified that he went to the bar about midnight and met K.K., her roommate, and Coquillette. Whittle testified that, instead of all four driving to Coquillette's house, as K.K. had testified, he and Coquillette walked while K.K. and her roommate drove together. He testified that Coquillette wanted to talk to him and assured him that K.K. and her roommate were "cool" and that they liked going out with black guys. Whittle testified that during the evening K.K. was flirting with him and "showing her butt." He testified that when they drove back from N.M.'s

friends' party, he sat in the front seat of the car with N.M. in his lap.

Whittle testified that when they arrived at the women's home, he put his coat in K.K.'s bedroom, at her suggestion, that he spent time in the bedroom with her and thought she was interested in him. He testified that he engaged in mutual kissing with N.M. in her bedroom until N.M. told him to stop and that he asked K.K. if he could sleep with her. Whittle testified that K.K. agreed and that she changed into her pajamas and they had consensual sex. He testified that Coquillette entered K.K.'s bedroom after he and K.K. had stopped having sex. Coquillette, however, did not corroborate this, testifying that he saw no signs of physical affection involving Whittle and that he encountered Whittle in the hallway early in the morning, not in K.K.'s bedroom. Whittle denied that he saw either K.K. or N.M. asleep that night. He admitted that he had been convicted in 1996 of giving a false name to a police officer.

On cross-examination, Whittle admitted that he had not told Sergeant Hogquist, in his taped statement, that K.K. had any tequila the night of the party. Whittle also admitted that he had not said anything about smoking marijuana in his statement. On re-direct, Whittle testified that Hogquist said he was not interested in the cocaine use or what people were drinking that night.

The jury found Whittle guilty of the first count, charging sexual penetration committed against K.K., and acquitted Whittle of the counts charging him with sexual penetration and sexual contact committed against N.M. The trial court sentenced Whittle to 44 months in prison.

## ISSUES

1. Did the trial court abuse its discretion in ruling the defense could not question K.K. about her probationary status?

2. Did the court abuse its discretion in ruling the state could impeach Whittle with omissions from his statement to police?

## ANALYSIS

■ Whittle argues that the trial court erred in two of its evidentiary rulings, entitling him to a new trial. Appellate courts review the trial court's evidentiary rulings for a clear abuse of discretion, recognizing that evidentiary matters rest within the sound discretion of the trial court. *State v. Amos,* 658 N.W.2d 201, 203 (Minn.2003). Whittle has the burden of showing not only that the trial court abused its discretion, but also that he was thereby prejudiced. *Id.*

■ 1. Whittle argues that the trial court abused its discretion in ruling the defense could not cross-examine K.K. about her alleged unsupervised probationary status in North Dakota at the time of the offense. Whittle argues that this evidence was admissible to show K.K.'s bias and her motivation in accusing him of criminal sexual conduct.

The supreme court has noted: "In criminal cases, the Confrontation Clause contemplates a cross-examination of the witness in which the defendant has the opportunity to reveal a prototypical form of bias on the part of the witness." *State v. Lanz–Terry,* 535 N.W.2d 635, 640 (Minn.1995). "Bias" generally refers to "the relationship between a party and a witness" that might cause the witness to "slant, unconsciously or otherwise, his testimony in favor of or against a party." *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984). K.K.'s probationary status had no relationship to Whittle, but Whittle argues that it created a form of self-interest mo-

tivating K.K. to accuse him. "Self-interest" is generally recognized as a source of partiality that may be used, along with bias directed at a party, to impeach the witness. I Charles T. McCormick, *McCormick on Evidence*, § 39, at 146–47 (John W. Strong, et al. eds., 5th ed.1999); *see Abel*, 469 U.S. at 52, 105 S.Ct. at 469 (stating bias may be induced "by the witness' self-interest").

The problem with Whittle's argument is that it was obviously in K.K.'s self-interest, regardless of her probationary status, to omit any reference to cocaine use from her statement to police simply because using cocaine is a criminal offense. K.K.'s alleged probationary status, therefore, had little probative value as impeachment evidence. The use of cocaine was also something that K.K. apparently knew would offend her family because she did not disclose it to her sister or mother either. That provided a secondary reason to conceal the cocaine use from police. K.K.'s alleged probationary status was merely an additional possible reason for nondisclosure, and one that posed the risk of unfairly prejudicing the state's case.

Thus, this is not a case in which the proposed method of impeachment was the only way of eliciting a particular form of bias or self-interest. *See generally State v. Greer*, 635 N.W.2d 82, 89 (Minn.2001) (noting that evidence that is only marginally useful to show bias may be excluded); *cf. Olden v. Kentucky*, 488 U.S. 227, 232, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988) (holding that proposed line of cross-examination of complainant to show her extramarital relationship, which might have been jeopardized if sex with defendant was consensual, should have been permitted).

As the state points out, another flaw in Whittle's argument is that K.K.'s allegation of a sexual assault was the means by which the cocaine use was *revealed*, not a

way for K.K. to *conceal* it. If the order of events were reversed, and K.K.'s use of cocaine had been disclosed first, she might have had an interest in minimizing or diverting attention from that offense by fabricating a rape allegation. But that is not what occurred.

Relevant evidence may be excluded if its probative value is outweighed by the potential for unfair prejudice, confusion of issues, misleading the jury, or needlessly presenting cumulative evidence. Minn. R. Evid. 403. When balanced against its cumulative, and rather minimal, probative value, the potential of K.K.'s alleged North Dakota probation for unfair prejudice, for distracting the jury by injecting the issue of K.K.'s past criminal conduct, and for wasting time on a peripheral issue was simply too great to support its admission. We conclude that the trial court was well within its discretion in excluding this evidence.

2. Whittle also argues that the trial court abused its discretion by ruling the prosecution could impeach him with his statement to police, which Whittle argues was not inconsistent with his trial testimony. The trial court, after reviewing the tape of Whittle's statement to police, concluded that the statement was voluntary and exculpatory and could be used by the prosecutor for impeachment. On appeal, Whittle concedes that even if there were a *Miranda* violation in the course of the interrogation, Whittle's statement would be admissible for impeachment purposes. *See State v. Slowinski*, 450 N.W.2d 107, 111 (Minn.1990). He argues, however, that the statement was not truly impeaching because there was nothing in it that was inconsistent with Whittle's trial testimony.

The prosecutor impeached Whittle with his failure to tell police in his state-

ment that K.K. drank tequila at the house the night of the apartment, or that the partygoers had smoked marijuana, or that the partygoers were "real tired" by the time they went to bed. Whittle does not refute the state's argument that witnesses may be impeached by their prior failure to state a fact. A witness's failure to state a fact in a previous account of the incident in question may, under the circumstances, be considered impeaching. *See Jenkins v. Anderson*, 447 U.S. 231, 239, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980). This court has held, for example, that a defendant could be impeached with his failure, after his arrest, to tell police that a companion had planted the gun on him. *State v. Houston*, 654 N.W.2d 727, 735–36 (Minn. App.2003), *review denied* (Minn. Mar. 26, 2003).

▮ The scope of cross-examination is largely left to the discretion of the trial court and will not be reversed absent a clear abuse of discretion. *State v. Dille*, 258 N.W.2d 565, 569 (Minn.1977). Whittle cites no authority requiring closer scrutiny of the impeachment value of a prior statement when the defendant's *Miranda* rights have been violated. Whittle is not raising a hearsay challenge to the use of the statement. *See* Minn. R. Evid. 801(c) (defining hearsay as out-of-court statement offered "to prove the truth of the matter asserted"), (d)(2)(A) (providing that party's own statement is not hearsay).

The state did not present Whittle's statement to police as a prior inconsistent statement admissible for substantive purposes. Thus, we are presented only with the question whether the trial court clearly abused its discretion in determining that Whittle's failure to mention certain facts in his statement to police had sufficient impeachment value to warrant the use of that statement in cross-examination.

▮ K.K.'s drinking tequila, or the partygoers' use of marijuana, or the fact that they were "real tired" by the time they went to bed, are not essential exculpatory details, as the "planting" of the gun was in *Houston*. But it was in Whittle's interest to bring out any facts casting doubt on the complainants' ability to accurately perceive or relate what occurred at the women's home. Certainly, their degree of fatigue and their consumption of alcohol and drugs could have affected the credibility of complainants' allegations. It was within the trial court's broad discretion to conclude that Whittle's omission of these details had sufficient impeachment value to warrant their use in cross-examination.

▮ We note that Whittle's argument that these details were not sufficiently impeaching necessarily implies their admission was not significantly damaging to the defense case. Thus, even if the trial court abused its discretion, we would conclude, based on the limited impeachment value of the details omitted and on the strength of the state's evidence, that there is no reasonable possibility that this evidence significantly affected the jury's verdict. *See generally State v. Post*, 512 N.W.2d 99, 102 n. 2 (Minn.1994).

The impeaching omissions went to the peripheral details of the evening—what people were drinking or what drugs they were using. The other witnesses' testimony went to more critical facts—whether there was flirting, or a sexually-charged atmosphere, and particularly whether Coquillette witnessed consensual sexual activity involving Whittle and K.K. Even with respect to the accuracy of K.K.'s perceptions, her use of tequila and marijuana and her degree of fatigue would be merely cumulative to evidence that she used cocaine, consumed other alcoholic drinks, and was partying into the early morning after getting off from work.

## DECISION

The trial court did not abuse its discretion in ruling K.K. could not be impeached with her probationary status in North Dakota or in ruling that the state could impeach Whittle with his omission of several details from his statement to police.

**Affirmed.**