STATE of Minnesota, Respondent,

v.

Kevin J. SCHANTZEN, Appellant.

No. 81–346.

Supreme Court of Minnesota.

Feb. 19, 1982.

C. Paul Jones, Public Defender, and Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and John H. Daniels, Sp. Asst. Attys. Gen., St. Paul, DeWayne P. Mattson, County Atty., and Raymond Schmitz, Asst. County Atty., Rochester, for respondent.

## OPINION

YETKA, Justice.

Defendant was found guilty by a district court jury of aggravated robbery, Minn. Stat. § 609.245 (1980), for the armed robbery on August 31, 1980, of the Joseph Pharmacy at St. Mary's Hospital in Rochester. Following the trial court's imposition of a 20-year maximum prison term, we considered defendant's sentencing appeal in *State v. Schantzen*, 308 N.W.2d 484 (Minn. 1981) (remanded for resentencing). This appeal by defendant from judgment of conviction challenges the sufficiency of the evidence on the issue of identification and contends that the trial court erred in admitting eyewitness identification testimony and certain other-crime evidence. We affirm.

1. Defendant's first contention is that the evidence of his guilt was legally insufficient.

The robbery was committed on August 31, 1981, by a short, thin man dressed in a nurse's uniform and wearing makeup, a blond wig, tinted glasses and armed with a

gun. Seven employees were present at the time. Of these, two identified defendant at the lineup and four identified him at trial. Other evidence connecting defendant to the crime included (a) eyewitness identification testimony by victims of three nearly identical pharmacy robberies committed in Grand Forks on July 20 and August 10, 1980, and in Superior on August 23, 1980; (b) evidence that defendant fit the general physical description of the robber in numerous ways; (c) evidence that defendant carried a driver's license bearing a picture of a woman with blond hair; (d) evidence that, when he was arrested, defendant, whose weekly take-home pay in the 3 months since his release from prison was about $275, possessed either singly or jointly with his brother about $4,000 in cash; (e) evidence that, shortly after the arrest, police searched a car which defendant had left just moments before the arrest and found two nurse uniforms similar to those worn by the robber and a sealed bottle of 100 morphine sulphate tablets similar to those taken in the Joseph Pharmacy robbery; and (f) evidence that the total street value of these 100 tablets was about $4,000.

Considering this and other evidence of guilt, we conclude that the evidence was sufficient to justify the guilty verdict.

2. Defendant's second contention, that the trial court erred in admitting the eyewitness identification evidence, is based on (a) the contention in the state public defender's brief that the lineup was unfair and (b) the contention in defendant's supplemental pro se brief that the identification testimony was the fruit of an illegal arrest.

■ The second ground for suppression was not adequately raised in the trial court and therefore we conclude that defendant must be deemed to have forfeited his right to have the issue considered on appeal.

■ The first ground, unfairness of the lineup, is without merit. Nine men, all apparently short, participated in the lineup that the victims of the various robberies viewed. The only striking element of un-

fairness resulted from defendant's admitted disguising of his voice by affecting a Spanish accent. This may have accounted for the fact that only two of the seven, rather than four of the seven, victims of the Rochester robbery identified defendant at the lineup. Considering all the factors bearing on the identification of defendant by the victims, we conclude that there was no "very substantial likelihood of irreparable misidentification." *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ 3. Defendant's final contention is that the trial court prejudicially erred in admitting the bottle of morphine sulphate tablets because the evidence was inadmissible other-crime evidence. Defendant argues that the evidence tended to show that he had committed another independent crime, namely, unlawful possession of a controlled substance, but that some of the prerequisites to admissibility of such evidence were lacking. Specifically, defendant contends that the evidence of his illegal possession of the bottle was not clear and convincing and, in support of this, he points out that charges based in part on the discovery of the bottle were dismissed in Hennepin County District Court. Defendant also argues that the potential of this evidence for unfair prejudice outweighed its probative value.

We believe that the trial court did not prejudically err in admitting this evidence. If one focuses only on the evidence of the circumstances surrounding the arrest and the discovery of the bottle, one might conclude that the evidence was insufficient to justify going forward with the prosecution. However, if one considers the evidence of the circumstances of the arrest and the discovery of the bottle in the context of the entire state's case against defendant on the robbery charge, the evidence was sufficient to connect defendant to the bottle of pills. *State v. Almengor*, 310 N.W.2d 554 (Minn. 1981); *State v. Walker*, 310 N.W.2d 89 (Minn.1981); *State v. Titworth*, 255 N.W.2d 241 (Minn.1977). The trial court could also

properly conclude that the evidence had significant probative value which was not outweighed by any potential of the evidence for unfair prejudice. The bottle found was just like the bottle taken in the robbery. Moreover, seconds before his arrest, the defendant was in the automobile in which that bottle of morphine pills was found.

Affirmed.