**In the Matter of the WELFARE OF E.D.J.**

**No. C0–92–862.**

Supreme Court of Minnesota.

July 9, 1993.

**780**

Warren R. Sagstuen, Asst. Public Defender, Minneapolis, William R. Kennedy, Hennepin County Public Defender, for appellant.

Hubert H. Humphrey, III, Minnesota Atty. Gen., St. Paul, Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

## OPINION

KEITH, Chief Justice.

In a series of decisions, we have articulated and reiterated the standard to be used by a trial court in determining at a suppression hearing in a criminal case whether an investigatory "seizure" of the person of the defendant by the police occurred. We have made it clear that the trial court should determine objectively, on the basis of the totality of the circumstances, whether a reasonable person in the defendant's shoes would have concluded that he or she was not free to leave.

Recently, the United States Supreme Court, in a sharp departure from this approach, concluded that, under the Fourth Amendment, a "seizure" of the person occurs only when police use physical force to restrain a person or, absent that, when a person physically submits to a show of authority by the police. *California v. Hodari,* — U.S. —, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

Exercising our independent authority to interpret our own state constitution, *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983), we have concluded that trial courts in Minnesota, in determining whether a "seizure" of the person of the defendant by police occurred, should not follow the recently adopted *Hodari* approach but should continue to apply the familiar approach we have previously articulated and reiterated. Following this familiar approach, we conclude that an unlawful "seizure" of the person occurred in this case and that the trial court erred in denying the motion to suppress evidence abandoned by appellant in response to the unlawful conduct of the police. Accordingly, we reverse the decision of the court of appeals and vacate the district court's determination that appellant, a juvenile, committed a delinquent act.

At 6:45 p.m. on February 22, 1992, two Minneapolis police officers on routine patrol saw three men—two were adults, one was a juvenile—standing on the southeast corner of 38th Street and Fourth Avenue South. The officers knew this corner to be an area of heavy trafficking in crack cocaine. When the three men saw the police car approaching from the west, they turned and began walking in an easterly direction on 38th, looking back again as they did so. The officers pulled up behind the men and ordered them to stop. The two older men stopped instantly. However, E.D.J., the juvenile, continued walking for approximately five steps, dropped something, took two more steps, *then* stopped and turned around.

E.D.J. was arrested and subsequently charged in juvenile court with having committed a delinquent act, specifically, fifth-degree possession of a controlled substance, namely crack cocaine. Minn.Stat. § 152.025, subd. 2(1) (1992). The trial court denied E.D.J.'s motion to suppress. Relying on *Hodari,* it reasoned that E.D.J. abandoned the cocaine before he was seized and that therefore the abandonment was not the suppressible fruit of any illegal conduct. *See State v. Dineen,* 296 N.W.2d 421, 422 (Minn.1980).

At the trial on the merits, the trial court found that E.D.J. had committed a delinquent act. The trial court then placed E.D.J. on probation and ordered him to perform 40 hours of community service.

The court of appeals, also relying on *Hodari*, affirmed. *In re E.D.J.*, 492 N.W.2d 829 (Minn.App.1992). We granted E.D.J.'s petition for review.

In *State v. Fuller*, 374 N.W.2d 722 (Minn.1985), in an opinion by Justice Peterson, we said:

It is axiomatic that a state supreme court may interpret its own state constitution to offer greater protection of individual rights than does the federal constitution. Indeed, as the highest court of this state, we are " 'independently responsible for safeguarding the rights of [our] citizens.' " State courts are, and should be, the first line of defense for individual liberties within the federalist system. This, of course, does not mean that we will or should cavalierly construe our constitution more expansively than the United States Supreme Court has construed the federal constitution. Indeed, a decision of the United States Supreme Court interpreting a comparable provision of the federal constitution that, as here, is textually identical to a provision of our constitution, is of inherently persuasive, although not necessarily compelling, force.

*Id.* at 726–27 (citations omitted) (footnote omitted). The language of Minn. Const. art. I, § 10, is identical to that of the Fourth Amendment of the United States Constitution. The decisions of the United States Supreme Court interpreting and applying the Fourth Amendment are therefore decisions to which we invariably turn in the first instance whenever we are asked in a criminal case whether the police conduct constitutes an unreasonable search and seizure.

■ In this case the issue is whether a "seizure" occurred when the police pulled up and ordered E.D.J. to stop or whether it occurred moments later when he actually submitted to the order. The answer to the question given by the United States Su-

preme Court in its recent decision in *Hodari* is that the "seizure" did not occur until E.D.J. actually submitted to the authority of the police by stopping. *Hodari*, 111 S.Ct. at 1552.

We do not "cavalierly" reject the *Hodari* approach. Rather, we reject it because (a) we have had considerable experience in applying the standard which the Court in *Hodari* rejected, (b) we are not persuaded by the arguments favoring the *Hodari* approach, and (c) we are persuaded that there is no need to depart from the pre-*Hodari* approach.

In *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968), Chief Justice Warren, speaking for the United States Supreme Court, stated that "not all personal intercourse between policemen and citizens involves 'seizures' of persons" and that a "seizure" occurs only "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."

In *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), the Court elaborated on this. Justice Stewart, announcing the judgment of the Court in an opinion joined by one other justice, said:

We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

On the facts of this case, no "seizure" of the respondent occurred. The events

took place in the public concourse. The agents wore no uniforms and displayed no weapons. They did not summon the respondent to their presence, but instead approached her and identified themselves as federal agents. They requested, but did not demand to see the respondent's identification and ticket. Such conduct, without more, did not amount to an intrusion upon any constitutionally protected interest. The respondent was not seized simply by reason of the fact that the agents approached her, asked if she would show them her ticket and identification, and posed to her a few questions. Nor was it enough to establish a seizure that the person asking the question was a law enforcement official.

*Id.* at 554–55, 100 S.Ct. at 1877 (citations omitted). Three concurring justices did not comment on the Stewart standard; four dissenters did not question the standard used by Stewart but said he had overlooked certain facts that would support a determination that a "seizure" occurred.

The standard articulated by Justice Stewart in *Mendenhall* was fully accepted by a majority of the Court in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), which we summarized in detail in *State v. Lande*, 350 N.W.2d 355, 357 n. 1 (1984). Specifically, a majority of the Court agreed that it was not a "seizure" for the police to merely approach the defendant in the airport and ask to see his ticket and his driver's license. *Royer*, 460 U.S. at 501, 103 S.Ct. at 1326. In *Royer* the "line was crossed" only when the police went beyond this and identified themselves as narcotics officers, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to a police room without telling him that he was free to leave. *Id.*

As stated by Professor LaFave, the *Mendenhall/Royer* standard:

rests upon the proposition that police, without having later to justify their conduct by articulating a certain degree of suspicion, should be allowed "to seek cooperation, even where this may involve inconvenience or embarrassment for the citizen, and even though many citizens will defer to this authority of the police because they believe—in some vague way—that they should." If "the moral and instinctive pressures to cooperate are in general sound and may be relied on by the police," then a street encounter does not amount to a fourth amendment seizure merely because of those pressures—that is, merely because the other party to the encounter is known to be a policeman. Rather, the confrontation is a seizure only if the officer adds to those inherent pressures by engaging in conduct significantly beyond that accepted in social intercourse. The critical inquiry is whether the policeman, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner which would be perceived as a nonoffensive contact if it occurred between two ordinary citizens.

Wayne R. LaFave, *"Seizures" Topology: Classifying Detentions of the Person to Resolve Warrant, Grounds, and Search Issues,* 17 U.Mich.J.L.Ref. 417, 424–25 (1984) (footnotes omitted).

We have been applying the *Mendenhall/Royer* standard ever since it was first articulated by Justice Stewart. Applying that standard, we have held, for example, that *generally* the mere act of approaching a person who is standing on a public street or sitting in a car that is parked and asking questions is not a "seizure." *See, e.g., State v. Lande,* 350 N.W.2d 355, 357–58 (Minn.1984), and *State v. Vohnoutka,* 292 N.W.2d 756, 757 (Minn.1980). To the same effect, see *Colorado v. Bannister,* 449 U.S. 1, 4, 101 S.Ct. 42, 43–44, 66 L.Ed.2d 1 (1980). On the other hand, our cases, too numerous to even need citation, also fully support the generalization that without question "the stopping of a vehicle and the detention of its occupants constitutes a 'seizure' within the meaning of the Fourth Amendment." *Id.* at 4 n. 3, 101 S.Ct. at 43 n. 3.

Moreover, the court of appeals has had considerable experience in applying the *Mendenhall/Royer* test. See, for example, the following court of appeals' decisions, which we cite only for illustrative purposes

and not to suggest that we necessarily agree with everything said therein: *State v. Day*, 461 N.W.2d 404, 407 (Minn.App. 1990), *pet. for rev. denied* (Minn., Dec. 20, 1990); *State v. Capers*, 451 N.W.2d 367, 371–72 (Minn.App.1990), *pet. for rev. denied* (Minn., Apr. 25, 1990).

We believe that the *Hodari* decision represents a departure from the *Mendenhall/Royer* approach. This is a belief shared by some of the leading commentators on the law of search and seizure. *See, e.g.*, Wayne R. LaFave, *Search and Seizure* § 9.2A(d) (2d ed. Supp.1993) (criticizing *Hodari*). In our view, *Hodari* adds another level of analysis, allowing a trial court to conclude that a seizure occurs only if (a) the *Mendenhall/Royer* test is satisfied *and* (b) the police either used physical force or the defendant submitted to the assertion of authority.

Were we persuaded that the additional level of analysis is justified, we would not hesitate to follow the United States Supreme Court's lead and interpret the identical provision of our state constitution accordingly. However, as we said earlier, we *are not* persuaded by the majority opinion in *Hodari*, and we *are* persuaded that there is no need to depart from the pre-*Hodari* approach.

Accordingly, exercising our independent authority to interpret our own state constitution, *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983), we have decided to continue to adhere to the pre-*Hodari* approach of determining, objectively and on the basis of the totality of the circumstances, whether a reasonable person in the defendant's shoes would have concluded that he or she was not free to leave.[1]

■ We emphasize that following this approach does not mean that police necessarily must possess articulable suspicion before they follow a person in public or before they approach a person in public. What it does mean is that if a trial court later determines that, under all the circumstances, a reasonable person would have believed that because of the conduct of the police he was not free to leave, then there was a "seizure," and the police must be able to articulate reasonable suspicion justifying the seizure, else any evidence that is the fruit of the seizure is suppressible.

■ Here, as we have said, there clearly was a "seizure" once the police directed E.D.J. to stop, and the question becomes whether the police articulated a sufficient basis for the stop. We conclude that they did not. *See State v. Dickerson*, 481 N.W.2d 840, 842–43 (Minn.1992) (upholding stop of defendant after he *came out of* a well-known crack house, caught the eye of a police officer, then made a sudden change in direction and began walking away from the officer), *aff'd*, —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993);[2] *State v. Johnson*, 444 N.W.2d 824, 827 (Minn.1989) (upholding stop of a motorist on the basis of deliberately evasive conduct by the motorist that caused the trooper to reasonably suspect motorist of wrongdoing).

Since there was a "seizure" of the person of E.D.J. and since the police did not articulate a sufficient basis for the "seizure," the cocaine should have been suppressed if it was a fruit of the illegality. Since E.D.J. abandoned the cocaine *after* he was unlawfully directed to stop, the abandonment was the suppressible fruit of the illegality. Without the evidence seized there was an insufficient basis for the delinquency adjudication. We therefore reverse the court of appeals and vacate the trial court's determination that E.D.J. committed a delinquent act.

---

1. On the general issue of exercising our independent authority to interpret our own state constitution, see Paul W. Kahn, *Interpretation and Authority in State Constitutionalism*, 106 Harv.L.Rev. 1147 (1993).

2. The United States Supreme Court's concern was not with this aspect of *Dickerson*, on which there was unanimous agreement by the members of this court. The United States Supreme Court's concern was with the frisk of the defendant in *Dickerson* and the seizure of crack cocaine felt in the course of the frisk, an issue which split this court 4–3.

Reversed and adjudication of delinquency vacated.