**Brian Jean OVERVIG, petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. A06–1043.

Court of Appeals of Minnesota.

May 8, 2007.

Samuel A. McCloud, Carson J. Heefner, McCloud & Boedigheimer, Shakopee, MN, for respondent.

Lori Swanson, Attorney General, Martin A. Carlson, Assistant Attorney General, St. Paul, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge; KLAPHAKE, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

Appellant challenges the district court's rescission of the revocation of respondent's driving privileges upon finding that respondent was unlawfully seized, arguing that under the totality of the circumstances the officer did not unlawfully seize respondent by opening respondent's car door. Because the officer did not seize respondent by opening the car door, we reverse.

## FACTS

After midnight on June 10, 2005, a patrolling police officer came upon respondent Brian Jean Overvig's car stopped with its engine running in an otherwise empty ballroom parking lot. The officer decided to investigate because he "wasn't sure if there was a problem with the driver, possibly to check on the welfare." The officer pulled up along side of the car and observed Overvig apparently asleep in the driver's seat.

The officer approached the car on the driver's side and confirmed that Overvig appeared to be sleeping or unconscious. Out of dual concern for Overvig's well-being and his reason for being there at that hour, the officer tapped on the window and asked Overvig to lower it. Overvig did not react. Only after the officer knocked on the window several more times and asked that it be lowered did Overvig lean over, tap on the inside of the window, and turn away on the seat. The officer knocked again and asked several more times for Overvig to lower the window. When Overvig did not move or respond in any way, the officer opened the unlocked driver's door. The officer immediately smelled an odor of alcohol, and Overvig showed signs of intoxication. Overvig failed a field sobriety test and was arrested and charged with driving under the influence. As a result, Overvig's driving privileges were revoked.

Overvig challenged the revocation, arguing that the evidence against him was obtained as the result of an unlawful seizure. At the hearing, the officer testified that initially he was suspicious of Overvig's car due to the circumstances of its location and that he was concerned that the driver could have been involved in a crime or was in need of medical assistance. The officer then stated that after Overvig eventually tapped on the window, turned his back, and failed to respond to the officer's repeated requests to lower the window, the officer felt that he could not simply leave because Overvig may have been in need of medical assistance.

At the conclusion of the hearing, the district court stated, "I do feel that [the officer] was premature in opening the car door, that there was an opportunity to communicate with the window closed," thus finding that the officer's act of opening the car door amounted to an unlawful seizure. Consequently, the district court

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

rescinded the revocation of Overvig's driving privileges. This appeal followed.

## ISSUE

Did the district court err by determining that the officer unlawfully seized respondent by the act of opening respondent's car door?

## ANALYSIS

Appellant Commissioner of Public Safety argues that the district court erred by finding that the officer unlawfully seized respondent Brian Jean Overvig. The commissioner contends that the officer's actions do not amount to a seizure under the circumstances. We agree.

We will not reverse a district court's findings regarding the legality of a search and seizure unless the findings are clearly erroneous or contrary to law. *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn.1997). When the facts are not in dispute we "must determine whether a police officer's actions constitute a seizure and if the officer articulated an adequate basis for the seizure." *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999).

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *In re Welfare of E.D.J.*, 502 N.W.2d 779, 781 (Minn.1993) (quotation omitted). We must look to the totality of the circumstances surrounding the incident to determine if "a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn.1995). Generally, "the mere act of approaching a person ... sitting in a car that is parked and asking questions is not a 'seizure.'"

*E.D.J.*, 502 N.W.2d at 782. And an officer's opening of a car door and asking the driver to get out may not always constitute a seizure. *Vivier v. Comm'r of Pub. Safety*, 406 N.W.2d 587 (Minn.App.1987); 4 W. LaFave, *Search and Seizure*, § 9.4(a), at 433–35.

Here, the commissioner argues that the circumstances of the encounter show that the officer did not seize Overvig by merely opening the car door. The officer did not park his vehicle in a position blocking Overvig's car from moving in either direction and did not activate his emergency lights, although he may have turned on other lights to illuminate the area. Furthermore, there is nothing in the record to suggest that the officer made any other showing of authority, such as displaying a weapon or using a tone of voice that would indicate that Overvig could not terminate the encounter once the officer opened the door. *E.D.J.*, 502 N.W.2d at 781.

Overvig argues that he effectively terminated the encounter by tapping back on the car window and turning away from the officer. Therefore, Overvig contends that the officer's opening of the car door amounts to an unlawful seizure. But we cannot say, based on the circumstances, that Overvig's conduct reasonably ended the initial encounter or that when the officer opened the car door a reasonable person would not have felt free to disregard the questions or terminate the encounter.

Whatever his subjective intention may have been, Overvig's acts of tapping on the window and turning away, and his continuing unresponsiveness, cannot be reasonably interpreted as a statement communicating the desire to end the encounter. Moreover, it is not reasonable in situations such as this to require officers to communicate with unresponsive or unconscious drivers through closed car windows when the driver refuses or is unable to lower the

window. To hold otherwise would unduly burden an officer's "duty to make a reasonable investigation of vehicles parked along roadways to offer such assistance as might be needed and to inquire into the physical condition of persons in vehicles." *Kozak v. Comm'r of Pub. Safety,* 359 N.W.2d 625, 628 (Minn.App.1984).

Therefore, we conclude that the officer did not seize Overvig by the act of opening the car door.

But even if we were to determine that the opening of the door did amount to a seizure, the officer in this instance was justified in doing so in order to investigate and assess the physical well-being of the driver.

It is not unreasonable for an officer to make a "brief seizure of a person for investigatory purposes" if the officer has an objective basis for suspecting that the person is involved in criminal activity or is in need of medical assistance. *Harris,* 590 N.W.2d at 99; *Kozak,* 359 N.W.2d at 628.

Here, the officer testified that he was suspicious because Overvig's car was standing with the engine running in an otherwise empty parking lot late at night. The officer was concerned about a possible crime or that the driver, asleep or unconscious behind the wheel, needed medical assistance. The officer's observations upon approaching the car revealed nothing to alleviate his concern about Overvig's physical well-being. After the officer's nonintrusive attempts to arouse him, Overvig's conduct did not reasonably communicate his well-being or possible subjective desire to terminate the encounter. And under these circumstances, we conclude that the officer had a reasonable, articulable concern for Overvig's physical well-being. Accordingly, because of the officer's reasonable belief that Overvig may have needed medical assistance, he was justified in opening the door and seizing Overvig in order to investigate his physical well-being. *Kozak,* 359 N.W.2d at 628.

## DECISION

The district court's finding that the officer unlawfully seized Overvig was clearly erroneous. The officer did not seize Overvig merely by opening the car door because under the circumstances a reasonable person would have believed that he or she was free to disregard the questioning or free to terminate the encounter.

**Reversed.**