*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0582**

State of Minnesota,
Respondent,

vs.

Kevin Earl Westergaard,
Appellant.

**Filed February 29, 2016
Affirmed
Rodenberg, Judge**

Hennepin County District Court
File No. 27-CR-14-20817

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**RODENBERG**, Judge

On appeal from his conviction of being a prohibited person in possession of a firearm, appellant Kevin Earl Westergaard argues that district court erred in denying his

motion to suppress evidence because police officers unlawfully seized and subsequently pat searched him. We affirm.

## FACTS

On July 18, 2014, at approximately 10:00 p.m., Minneapolis police officers Andrew Carigiet and Justin Young were on patrol when they were dispatched to assist in locating one or two unknown males suspected to have been tampering with motor vehicles. The suspect(s) had fled from a truck which had its "VIN plate" (vehicle identification number) altered, indicating that the truck or its parts had likely been stolen. Officers Carigiet and Young joined other officers searching a "broad area" for the suspect(s).

One male believed to be involved in the vehicle tampering was apprehended by other officers. As the search continued, Officers Carigiet and Young were dispatched to a residence near the vehicle tampering to recover possible videotape evidence from a home security system. En route, and within blocks of where the vehicle tampering had been reported, the officers observed a Cadillac legally parked, with its lights off, under a tree and away from any streetlights on a quiet residential street that "has very few calls for service." The Cadillac was the only vehicle parked on the street. The officers took notice because the Cadillac was not parked near any driveway or sidewalk, which they thought was unusual at that hour. The officers shone their squad car's spotlight on the Cadillac as they pulled up to it. They observed a person in the driver's seat and two people in the back seat, which "raised concerns" because "usually . . . one person [is

sitting] in the back and two people [are sitting] in the front." The officers also observed that the Cadillac's rear passenger door was open.

Believing that the Cadillac might be related to the tampering case, the officers pulled their marked squad car alongside and to the front of the Cadillac, parking near the Cadillac's front left bumper. The officers did not activate their squad car's emergency lights.[1] Uniformed and armed, the officers approached the Cadillac. Officer Carigiet observed a person later identified as appellant "slumping" or "sinking" down into the back seat. Based on his training and experience as a police officer, Officer Carigiet thought such behavior was indicative of a person attempting to avoid or evade police contact.

Officer Carigiet asked the female driver to roll down her window. He informed the Cadillac's occupants that the officers were investigating recent vehicle tampering in the area. Speaking in what he described as a normal tone, Officer Carigiet asked the occupants what they were doing in that location, and requested identification. The two female occupants stated that they were just parked there and handed the officer their identification. Appellant stated that he did not have identification with him. He "muttered something" to the female in the back seat. Appellant appeared to be

---

[1] Officer Carigiet testified that he did not recall whether the emergency lights were on, but stated that the squad video would have automatically started if they had been activated, and the squad video did not activate. Officer Young testified that the emergency lights were not on. Based on Officer Young's testimony and the lack of a squad video in this case, the district court found as a fact that the emergency lights were not activated.

3

intoxicated. The driver told the officers that appellant had just been picked up and that he was "wasted."

After indicating that he did not have identification, appellant shifted his weight to his right side and began rummaging through his pockets. Concerned that appellant might be armed, Officer Carigiet went around to the passenger's side of the Cadillac and asked appellant to exit the vehicle. Officer Young continued to talk with the driver, who asked if she could exit the Cadillac and nodded towards the back seat several times. Officer Young believed the driver to be communicating nonverbally that she did not want the back-seat occupants to hear what she planned to tell him. Concerned for his and his partner's safety because of appellant's suspicious actions and apparent intoxication, Officer Carigiet performed a protective frisk of appellant. Officer Carigiet discovered a loaded handgun in appellant's right-back pocket. Officer Carigiet handcuffed appellant and placed him in the squad car. It was later determined that appellant was prohibited from possessing firearms, and he was therefore charged under Minn. Stat. § 624.713, subd. 1(2) (2012).

Before trial, appellant moved to suppress the firearm as the fruit of an unconstitutional search and seizure and, derivatively, to dismiss the complaint for want of probable cause. At the *Rasmussen* hearing, *State ex rel. Rasmussen v. Tahash,* 272 Minn. 539, 141 N.W.2d 3 (1965), the district court heard testimony from Officers Carigiet and Young and another officer investigating the vehicle tampering. It denied appellant's suppression motion. Appellant waived his trial rights, and the parties submitted the case

4

to the district court on stipulated facts.[2]  The district court found appellant guilty and sentenced him to 60 months in prison.  This appeal followed.

## D E C I S I O N

Appellant argues that the district court erred in denying his motion to suppress the firearm seized from him.  "When reviewing a district court's pretrial order on a motion to suppress evidence, [an appellate court] review[s] the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted).  If the relevant facts are undisputed, we apply a de novo standard of review to a district court's conclusion that a seizure is justified by a reasonable, articulable suspicion.  *State v. Diede*, 795 N.W.2d 836, 843-44 (Minn. 2011).

*Moment of seizure*

Appellant argues that he was seized when the officers shone their spotlight on, and parked their marked squad car near the front bumper of, the vehicle he was occupying, and approached that vehicle while armed and in uniform.  He maintains that the officers did not have a reasonable, articulable suspicion of criminal activity justifying the investigatory detention of the vehicle.

Both the Minnesota and United States Constitutions protect individuals from unreasonable searches and seizures.  U.S. Const. amend. IV; Minn. Const. art. I, § 10.  A

---

[2] The parties identified the proceedings as a "*Lothenbach* trial" on the record, but appellant's signed waiver of his trial rights made reference to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 3.  No argument is made in the briefing that this apparent incongruity has any effect on the merits of this appeal.

seizure occurs "'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *In re Welfare of E.D.J.*, 502 N.W.2d 779, 781 (Minn. 1993) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n.16, (1968)). When analyzing whether a seizure has occurred, we determine whether a police officer's actions would lead a reasonable person under the same circumstances to believe that he was not free to leave. *State v. Hanson*, 504 N.W.2d 219, 220 (Minn. 1993). Whether a seizure has occurred depends on the totality of the circumstances using a reasonable-person standard. *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). Circumstances that may indicate a seizure took place include "the threatening presence of several officers," an officer's display of a weapon, physical touching of the person, or "language or tone of voice indicating that compliance with an officer's request might be compelled." *E.D.J.*, 502 N.W.2d at 781-83 (first quoting and citing *United States v. Mendenhall*, 446 U.S. 544, 554-55, 100 S. Ct. 1870, 1877 (1980); and then citing *Florida v. Royer*, 460 U.S. 491, 501, 103 S. Ct. 1319, 1326 (1983)).

There is no seizure for constitutional purposes when an officer walks up to an already stopped car and converses with the driver. *State v. Vohnoutka*, 292 N.W.2d 756, 757 (Minn. 1980); *Crawford v. Comm'r of Pub. Safety*, 441 N.W.2d 837, 839 (Minn. App. 1989). "Nor does a seizure occur simply because a person feels some 'moral or instinctive pressure to cooperate' with the officer." *Illi v. Comm'r of Pub. Safety*, ___ N.W.2d ___, ___, No. A15-0359, 2015 WL 9264036 at *2 (Minn. App. Dec. 21, 2015) (quoting *Harris*, 590 N.W.2d at 99). Because the Cadillac was already stopped before any police involvement, and because the officers' approach was not itself a seizure, "we

6

must consider whether the officer's pre-approach conduct constituted a seizure." *Illi*, 2015 WL 9264036 at *2.

Appellant argues that he was seized when the officers "parked their marked squad car in a manner indicating that the [Cadillac] was not free to leave." An officer's blocking of a vehicle may constitute a seizure, because such police action might indicate to a reasonable person that the person is not free to leave. But here, the district court did not find, nor do the facts suggest, that the Cadillac was blocked in by the squad car so as to prevent it from being able to leave. *See Illi*, 2015 WL 9264036 at *2 (citing *State v. Sanger*, 420 N.W.2d 241, 243 (Minn. App. 1988)). The officers parked the squad car near the left-front bumper of the Cadillac because they were driving past the vehicle with no intention of seizing it or stopping near it until they observed it to be occupied. The district court did not find, nor does the record support, that the squad car was parked so as to prevent the Cadillac from moving. *See State v. Lopez*, 698 N.W.2d 18, 22 (Minn. App. 2005) (the use of a squad car to block a parked vehicle generally constitutes a seizure); *Sanger*, 420 N.W.2d at 242 (stating that the officer, "by his own admission, parked his squad car in such a position that [the defendant] could not exit"). The officers' parking their squad car as they did alongside and near the front-left bumper of the Cadillac did not constitute a seizure.

Appellant also argues that the officers' use of the squad car's spotlight to illuminate the Cadillac, together with other factors, amounted to a seizure. This argument fails. As we recently held in *Illi*, an officer shining a squad car's spotlight on an already stopped car before approaching it on foot does not constitute a seizure. *Illi*, 2015 WL

7

9264036 at *4. Further, as *Illi* recognizes, an officer's actions in parking his marked squad car within feet of the individual's vehicle, shining a spotlight on it, and approaching the driver does not constitute a seizure. *Illi*, 2015 WL 9264036 at *2-4.

Appellant argues that the officers' approaching the Cadillac "in full uniform with their semi-automatic handguns visible, in a show of authority" constituted a seizure. In *State v. Day*, we held that "the summoning by the police officer, who was in uniform and armed, requiring appellant to approach the officer's squad car to provide identification and to respond to questioning, constitutes a restraint and seizure under the fourth amendment." 461 N.W.2d 404, 407 (Minn. App. 1990), *review denied* (Minn. Dec. 20, 1990). *Day* is distinguishable. There, the police officer required the driver to approach the squad car and respond to questioning. *Id.* Here, the officers approached the vehicle. They did not command the Cadillac's occupants to do anything at that point. Instead, they walked up to a parked vehicle. While the officers were visibly armed, there is no evidence that they actively displayed their service revolvers. *See E.D.J.*, 502 N.W.2d at 781 (stating that one factor indicating a seizure has occurred is "the display of a weapon by an officer").

An officer does not seize every person whom the officer approaches simply by wearing a uniform and carrying a service revolver. Appellant would seemingly advocate adoption of a rule of law requiring officers to change out of their uniform and discard their service weapons before approaching stopped vehicles or people they might pass on the street. There is no such rule of law and we decline to adopt one. *See State v.*

8

*Patterson*, 796 N.W.2d 516, 533 (Minn. App. 2011) (stating that this court is an "error correcting court") (quotation omitted), *aff'd*, 812 N.W.2d 106 (Minn. 2012)

Appellant was not seized when the officers shone their squad-car light on, and then parked their marked squad car near the front bumper of, the vehicle appellant was occupying. Nor was appellant seized when the officers approached the Cadillac while armed and in uniform.

### Reasonable suspicion to frisk

Appellant argues that Officer Carigiet lacked reasonable, articulable suspicion sufficient to justify a pat search, and that he was "obviously intoxicated" and could have been searching for identification in response to the officers' request.

The Fourth Amendment to the United States Constitution and article I, section 10 of the Minnesota Constitution guarantee an individual's right to be free from unreasonable searches and seizures. *State v. Jackson*, 742 N.W.2d 163, 174-75 (Minn. 2007). Evidence seized in violation of the constitution must generally be suppressed. *Id.* at 177-78. "Warrantless searches are generally unreasonable unless they fall within a recognized warrant exception." *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009). One of the exceptions to the warrant requirement is for protective pat-down searches on the outside of a suspect's clothing to find weapons. *Terry v. Ohio*, 392 U.S. 1, 29-31, 88 S. Ct. 1868, 1883-85 (1968). Under *Terry*, police officers "may stop and frisk a person when (1) there is a reasonable, articulable suspicion that a suspect might be engaged in criminal activity and (2) the officer reasonably believes the suspect might be armed and dangerous." *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), *aff'd*, 508 U.S. 366,

9

113 S. Ct. 2130 (1993). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923 (1972).

Having lawfully approached the Cadillac in which appellant was seated, the officers observed several things about appellant that reasonably concerned them. Appellant was slumping down as if to avoid the police, he was intoxicated, and he seemed to be fidgeting with something in his pocket despite having said that he had no identification with him. The Cadillac was the only vehicle parked on a street located within blocks of the vehicle-tampering report, and one or two male suspects had fled approximately 40 minutes earlier. Only one person had been apprehended, and police were still looking for another possible suspect. There was a person in the Cadillac's driver's seat and two people in the back seat. The Cadillac, parked away from any sidewalks or driveways, had its rear passenger door open. The woman in the driver's seat seemed to be signaling to Officer Young that she wished to talk with the officer away from her passengers. The totality of the circumstances was sufficient to support Officer Carigiet's enunciated suspicion of criminal activity.

Appellant's rummaging in his pockets after having disclaimed possession of any form of identification also reasonably alerted Officer Carigiet that appellant might be armed. The furtive movements that an officer observes provide a reasonable basis for conducting such a protective pat search. *See State v. Flowers*, 734 N.W.2d 239, 252 (Minn. 2007) (concluding that "suspicious movements" in the vehicle gave officers reasonable suspicion that defendant might have been armed and dangerous); *Dickerson*,

10

481 N.W.2d at 843 (stating that evasive conduct may give rise to reasonable suspicion). Officer Carigiet was reasonably concerned for his and his partner's safety because the two officers were encountering three people, one of whom was apparently intoxicated and remained unidentified. Other officers in the area were still occupied with the search for a suspect in the vehicle tampering. We conclude that Officer Carigiet had ample cause to pat search appellant in these circumstances.

Appellant argues that his fidgeting with his pockets might have been in response to the officer's request for identification, and that Officer Carigiet was not truly concerned because he did not alert Officer Young or call for back-up. These arguments are unavailing. "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277, 122 S. Ct. 744, 753 (2002). The district court did not err in determining that Officer Carigiet had reasonable, articulable suspicion under *Terry* supporting the pat search of appellant. We therefore affirm its denial of appellant's motion to suppress.

**Affirmed.**