*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1240**

State of Minnesota,
Respondent,

vs.

Joseph Michael Galler,
Appellant.

**Filed February 13, 2017
Reversed
Kirk, Judge**

Waseca County District Court
File No. 81-CR-15-435

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brenda Miller, Waseca County Attorney, Alex Saumer, Assistant County Attorney,
Waseca, Minnesota (for respondent)

Thomas K. Hagen, Rosengren Kohlmeyer & Hagen, Chtd., Mankato, Minnesota (for
appellant)

Considered and decided by Schellhas, Presiding Judge; Kirk, Judge; and Bratvold,

Judge.

## UNPUBLISHED OPINION

**KIRK**, Judge

Appellant challenges the district court's denial of his motion to suppress evidence,

arguing that the court erred in determining that the traffic stop of his vehicle was supported

by reasonable articulable suspicion. Because the district court erred in determining that suspicious behavior on the part of appellant's backseat passenger after an unlawful seizure provided reasonable articulable suspicion to support the traffic stop, we reverse.

## FACTS

Following a traffic stop of his vehicle, appellant Joseph Michael Galler was charged with a number of offenses, including underage drinking and driving. Appellant moved to suppress evidence obtained during the traffic stop, arguing that the seizure was unlawful because it was not supported by reasonable articulable suspicion. The district court denied the motion, holding that the officer's observation of appellant's backseat passenger's conduct provided adequate reasonable articulable suspicion to support the traffic stop. Appellant entered what the parties and court referred to as a *Lothenbach* plea to underage drinking and driving and appealed the district court's denial of his suppression motion.[1]

At the omnibus hearing on appellant's motion, the officer who initiated the traffic stop testified that he observed appellant's vehicle cross his path from two blocks away, at night, for less than one second, and visually estimated that its speed exceeded the posted 30-mile-per-hour speed limit. The officer did not provide a specific estimate of appellant's speed when he testified or in his report. The officer's opinion that appellant was speeding was based entirely on his training and experience, and he did not verify appellant's speed with speed-measurement equipment or by pacing appellant's vehicle. The officer testified

---

[1] "In 2007, Minn. R. Crim. P. 26.01, subd. 4, replaced *Lothenbach* as the method for preserving a dispositive pretrial issue for appellate review in a criminal case." *State v. Myhre*, 875 N.W.2d 799, 802 (Minn. 2016). Here, despite being improperly referred to as a *Lothenbach* plea, appellant's plea complied with rule 26.01, subdivision 4.

2

that his training in visual speed detection of vehicles occurred during daytime hours, involved observing vehicles for longer than one second, and that his speed estimates have been wrong before.

The officer testified that he caught up to appellant's vehicle by traveling on side roads, and that he had been behind appellant for less than one block when he saw the backseat-driver-side passenger open the door of the moving vehicle and jump out. He testified that the passenger ran eight to ten feet before turning around, running back to the vehicle, and getting back inside. The officer testified that the passenger was outside of appellant's vehicle for a few seconds, and that once the passenger got back in the vehicle, the vehicle started moving again. The officer was less than one car length behind appellant's vehicle when he observed the passenger's conduct, and he initially testified that he activated his emergency lights after the passenger got back in the vehicle.

On cross-examination, the officer was shown a portion of Exhibit 1, his squad video from the traffic stop of appellant's vehicle. The officer acknowledged that the squad video shows that he flashed his emergency lights before the backseat passenger exited appellant's vehicle, and that after the passenger got back in the vehicle, he turned his emergency lights on a second time and proceeded to make the traffic stop.[2]

---

[2] Our review of Exhibit 1 verifies that the officer caught up to appellant's vehicle and briefly followed it from about one block away. Appellant's vehicle then approached a stop sign and began to stop. The officer activated his emergency lights before the backseat passenger exited the vehicle. The officer then deactivated his emergency lights and pulled alongside appellant's vehicle as the passenger got back in the vehicle. Appellant's vehicle then slowly proceeded through the intersection alongside the officer's squad vehicle. The officer remained beside appellant's vehicle and activated his emergency lights again. Appellant's vehicle then pulled over and the officer pulled up alongside it.

The officer testified that he stopped appellant's vehicle for the following reasons: (1) appellant was driving in excess of the posted speed limit; (2) he believed the passenger could be the victim of a crime and in need of a welfare check; and (3) the passenger's behavior was suspicious and indicative of criminal activity. He testified that the passenger "could have been fleeing from law enforcement" because the squad vehicle was close enough to appellant's vehicle for the passenger to have seen it.

In denying appellant's suppression motion, the district court first concluded that, under the totality of the circumstances, the officer did not possess reasonable articulable suspicion that appellant was speeding. Next, the court concluded that the squad video does not support the conclusion that the passenger could have been the victim of a crime because "it is unlikely that [he] would have stopped running to return to the vehicle after making his exit." But the district court ultimately upheld the traffic stop because it concluded that the passenger could have been fleeing law enforcement when he exited the vehicle, and that the officer's observation of the passenger's conduct provided reasonable articulable suspicion to justify the stop.

This appeal follows.

## DECISION

**The district court erred by concluding that the traffic stop was supported by reasonable articulable suspicion.**

"When reviewing a district court's pretrial order on a motion to suppress evidence, 'we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo.'" *State v. Gauster*, 752 N.W.2d 496, 502

(Minn. 2008) (quoting *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007)). We review determinations of reasonable articulable suspicion de novo and consider the totality of the circumstances to determine whether a reasonable basis justified a stop. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000).

Both the United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. However, a law enforcement officer may temporarily detain a person that the officer suspects has engaged in criminal activity if "the stop was justified at its inception by reasonable articulable suspicion, and . . . the actions of the police during the stop were reasonably related to and justified by the circumstances that gave rise to the stop in the first place." *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011) (quotation omitted); *see also Terry v. Ohio*, 392 U.S. 1, 19-21, 88 S. Ct. 1868, 1878-80 (1968). A seizure occurs when a reasonable person, in light of all of the surrounding circumstances, would not feel free to leave. *State v. Askerooth*, 681 N.W.2d 353, 362 (Minn. 2004); *In re Matter of Welfare of E.D.J.*, 502 N.W.2d 779, 781 (Minn. 1993).

The stop must not be "the product of mere whim, caprice, or idle curiosity." *State v. Barber*, 308 Minn. 204, 206, 241 N.W.2d 476, 477 (1976) (quotation omitted); *State v. Martin*, 406 N.W.2d 37, 38 (Minn. App. 1987), *review denied* (Minn. June 30, 1987). There must be particularized and objective facts for suspecting that a crime has been committed. *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981); *State v. Waddell*, 655 N.W.2d 803, 809 (Minn. 2003). An officer may draw rational inferences and make deductions from all of the circumstances leading up to the stop in determining

5

whether a particular and objective basis exists to justify the stop. *State v. Schrupp*, 625 N.W.2d 844, 846-47 (Minn. App. 2001), *review denied* (Minn. July 24, 2001). An officer must only specify conduct that supports a reasonable inference of criminal activity, not suspicion of a specific crime. *See State v. Johnson*, 444 N.W.2d 824, 827 (Minn. 1989).

**A.    The officer's allegation of speeding did not provide sufficient reasonable articulable suspicion to support the traffic stop.**

A police officer's visual estimation of a vehicle's speed may be sufficient to support a traffic stop. *See State v. Ali*, 679 N.W.2d 359, 367 (Minn. App. 2004) (upholding conviction for speeding where officer testified that he was trained to "accurately estimate the speed of a moving vehicle within five [miles per hour]," that he had 25 years of experience, and that he verified his estimate of the suspect vehicle's speed with a speed-measuring device); *Sazenski v. Comm'r of Pub. Safety*, 368 N.W.2d 408, 409 (Minn. App. 1985) (upholding a traffic stop where the officer, who had "formal training in the estimation of traffic speed," estimated that the suspect vehicle was traveling between 70 and 80 miles per hour in a 50-mile-per-hour zone).

Appellant asks this court to affirm the district court's determination that the officer's allegation of speeding did not provide reasonable articulable suspicion to support the traffic stop because the officer did not provide an estimate of appellant's speed or a margin of error, did not verify his estimate in any way, and because the officer admitted to past errors in speed estimation. Appellant also argues that, based on the totality of the circumstances, viewing appellant's vehicle from two blocks away, at night, for less than a second, was not

6

sufficient to estimate his speed. Appellant concludes that there was no way to evaluate the reasonableness of the officer's conclusion. We agree with appellant.

Because the officer here presented a generalized, unsupported opinion that appellant was speeding, rather than particularized and objective facts to support his suspicion, he did not establish that he had reasonable articulable suspicion to support the traffic stop. *See Cortez*, 449 U.S. at 417-18, 101 S. Ct. at 694-95; *Waddell*, 655 N.W.2d at 809. The district court did not err when it concluded that the officer's allegation of speeding did not support the traffic stop.

> **B.** **The district court erred when it concluded that the passenger's conduct, which occurred after appellant's vehicle was seized, provided sufficient reasonable articulable suspicion to support the traffic stop.**

As noted above, a seizure occurs when a reasonable person, in light of all of the surrounding circumstances, would not feel free to leave. *Askerooth*, 681 N.W.2d at 362; *E.D.J.*, 502 N.W.2d at 781. An officer cannot use information or observations that occurred after a suspect was seized to justify a seizure. *Diede*, 795 N.W.2d at 842. A suspect is seized when he is ordered to stop, not when he submits to the order. *E.D.J.*, 502 N.W.2d at 783. "Under certain circumstances, an officer's flashing red lights can be a significant factor in determining whether a seizure has occurred." *State v. Bergerson*, 659 N.W.2d 791, 795 (Minn. App. 2003). This is particularly true when the squad vehicle is positioned in a way as to communicate that the suspect vehicle is the target of the seizure. *See id.* at 795-96 (concluding that the appellant was seized when the officer activated his emergency lights and the appellant's vehicle was directly in front of the officer's squad vehicle); *see also State v. Lopez*, 698 N.W.2d 18, 22 (Minn. App. 2005) (concluding that

7

the appellant was seized when the officer activated his emergency lights and partially blocked the forward movement of her vehicle).

Appellant asks this court to reverse the district court's denial of his motion to suppress because his vehicle was seized when the officer turned on his emergency lights the first time, and that any subsequent conduct by his passenger could not be used to justify the traffic stop. The state asks this court to affirm the district court's denial of appellant's motion to suppress because the passenger's behavior was "so unusual and suspicious that [it] support[s] at least one inference of the possibility of criminal activity," and therefore supports the traffic stop. The state argues that because no evidence of appellant's subjective reaction to the officer flashing his emergency lights was submitted at the omnibus hearing, there is no reason to conclude that appellant felt as though he was not free to leave. This argument ignores the fact that whether or not an individual is seized is an objective rather than subjective inquiry. *E.D.J.*, 502 N.W.2d at 783.

The officer's testimony and the squad video establish that the officer activated his emergency lights before the passenger exited appellant's vehicle. The district court also found that the passenger opened the door of the vehicle "[a]t the same time that the emergency lights activated." Because of this timing, the relevant question is whether appellant's vehicle was seized when the officer flashed his emergency lights. The record shows that the officer flashed his emergency lights directly behind appellant's vehicle and that there were no other vehicles or people in the area. Under these circumstances, a reasonable person would not have felt free to leave and appellant was seized.

8

Based on the officer's testimony and the squad video, the officer did not observe or consider the passenger's conduct prior to activating his emergency lights and seizing appellant. Aside from the unsupported allegation that appellant was speeding, the officer did not point to any other suspicious activity that occurred before the seizure that would have supported a traffic stop. Therefore, the district court erred when it allowed the passenger's conduct to be used to retroactively justify the traffic stop. *Diede*, 795 N.W.2d at 842. Because appellant was seized before the passenger exited the vehicle, whether or not his conduct was suspicious or indicative of criminal activity is not relevant to this analysis and appellant's motion to suppress should have been granted.

Furthermore, even if the passenger's actions were indicative of an attempt to flee law enforcement as the district court concluded, the passenger's conduct was not sufficient to purge the illegality of the initial seizure. In *Bergerson*, this court concluded that where the subject of a traffic stop failed to yield to an officer's emergency lights for about one mile then fled on foot before he tripped and was arrested, his flight was not "an intervening circumstance sufficient to purge the taint of illegality" of an unlawful seizure. 659 N.W.2d at 798. This is because when the subject of an unlawful seizure merely flees without physically resisting arrest, his flight is not sufficient to constitute an intervening circumstance. *Id.*; *see State v. Ingram*, 570 N.W.2d 173, 179 (Minn. App. 1997) (concluding that where the subject pushed an officer away and fled in the midst of an unlawful seizure, his physical resistance and flight constituted a sufficient intervening circumstance to purge the illegality of the initial seizure), *review denied* (Minn. Dec. 22, 1997).

Here, the passenger almost immediately submitted to the officer's show of authority by reentering appellant's vehicle. There is also no indication that the passenger, or appellant for that matter, physically resisted the unlawful seizure. There is no evidence in the record for this court to conclude that the passenger's conduct of briefly exiting the vehicle was sufficient to purge the taint of the unlawful seizure.

We conclude that the district court erred when it determined that the passenger's conduct provided reasonable articulable suspicion to support the traffic stop and denied appellant's suppression motion. Because the passenger's conduct occurred after the officer initiated the unlawful traffic stop, the officer did not have reasonable articulable suspicion to support the stop, and we reverse.

**Reversed.**